THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EARLEAN TYLER, Defendant-Appellant.

First District (5th Division)   No. 1—87—1151

Opinion filed September 8, 1989.

548

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Chapman & Cutler, both of Chicago (Susan Mullane, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

After a jury trial, defendant was convicted of two counts of aggravated battery and one count each of armed violence and attempted murder. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4(a), 12—4(b)(1), 33A—2, 8—4.) She was sentenced to eight years' imprisonment for attempted murder and now appeals. She raises the following two issues: (1) whether the trial court erred when it refused to instruct the jury on self-defense; and (2) whether she was proven guilty beyond a reasonable doubt of attempted murder. We reverse and remand for new trial.

The State presented the following witnesses. Tanya Steele testified that on July 12, 1985, she was 15 years old. At approximately 10:30 p.m., she was sitting on the steps of a church near her house with her younger brother, Nicholas Steele, and her friend, Monica Campbell. Defendant, her sister, Felicia Tyler, and their friend, Simone Camp, walked past the group on the church steps when defendant and Felicia called Tanya a bitch. Tanya told Nicholas not to say anything, and Monica told Tanya not to say anything. Tanya, Nicholas, and Monica ignored the insult. Defendant stated, "What did you say?" Although Tanya, Nicholas, and Monica did not respond, defendant continued making comments until Tanya stated, "Leave me alone. Get out of my face." Defendant hit Tanya with an open hand in the face. Tanya hit defendant in the face. Tanya then felt a pain or punch in her side and later learned she was stabbed. Monica moved

Tanya away from defendant, and Tanya testified that defendant did not come toward her anymore. Tanya testified that she saw a blade, approximately eight inches long, in defendant's hand during the incident but did not know when she saw it. After Tanya was stabbed, she walked away with Monica and Nicholas, and she was taken to the hospital.

Tanya testified she did not threaten or insult defendant and she was not carrying any weapons. She had known defendant for approximately nine years prior to the incident.

Nicholas' testimony substantially corroborated Tanya's testimony with a few additions. Nicholas testified that before defendant stabbed Tanya, defendant stated, "You can get your sister. I will kill her and anybody else." He saw defendant take a knife from her purse and stab Tanya. He testified the blade of the knife was approximately four or five inches long. Monica pulled Tanya away as defendant tried to stab Tanya again.

Dr. Rodrigo Floro testified that he examined Tanya in the emergency room of the hospital. She had a stab wound in the lower right abdominal area and she was in shock. The doctor testified she lost a considerable amount of blood and her injury was life-threatening. The doctor performed emergency surgery to save Tanya's life, and she remained in the hospital for approximately 11 days.

Defendant's first witness was her sister, Felicia, who testified that on the evening in question she was walking with defendant and their friend, Simone, when they heard Nicholas and Tanya calling them bitches and whores. Defendant asked Tanya why Nicholas was calling them names and Tanya stated to Nicholas, "Don't be scared. Tell them why you are calling them names." A verbal confrontation began, and Tanya stated in a hostile, loud voice, "So what? Do that mean bitch [sic]?" Felicia asked Tanya why she was "getting smart." Tanya punched Felicia on the shoulder and stated, "Shut up and stay out of it." Felicia punched Tanya in the chest. Then Tanya struck defendant and defendant struck her back. As Tanya walked away, she was calling defendant, Felicia, and Simone names and stated, "You all take your ass home, bitches, because I'm going to get you all back."

Felicia did not see a knife in defendant's hand during the incident, but as they were walking home, she saw defendant throw a knife in some bushes.

Simone's testimony substantially corroborated Felicia's, but Simone also testified that after Tanya hit Felicia, Tanya stated to defendant, "Earlean, what the hell are you going to do?" Tanya then hit defendant. When Tanya started to hit defendant again, defendant

hit Tanya. Tanya's friend pulled her away as Tanya tried to hit defendant again.

Defendant testified that on the night in question she was 19 years old. She was walking with Felicia and Simone when they heard Tanya and Nicholas calling them bitches and whores. Defendant asked Tanya why she and Nicholas were calling them names. Tanya said, "Bitch, so what?" Defendant said, "Tanya, I'm just trying to talk to you nicely, and ask you why you're calling us names." Tanya said, "Go ahead, Nicholas, tell them what we were saying." Felicia asked Tanya why she was "getting smart" with defendant and Tanya punched Felicia. Felicia punched Tanya in return. Tanya then punched defendant in the face and stated, "No, bitch, what you going to do [sic]?" Defendant hit Tanya back in the face. When Tanya tried to hit defendant again, defendant punched Tanya with an open pocket knife and Monica pulled Tanya back. As defendant walked away, Tanya stated, "I will get you bitches and whores back." While defendant was walking home after the altercation, she threw the knife in the bushes.

Defendant indicated that the blade of the knife was two or three inches in length. When asked why she used the knife, defendant testified, "Because I was afraid, and it was three of them. I didn't know what she was going to do, which direction she was coming from next." She thought that she was going to get beaten.

On cross-examination, defendant testified she did not know she stabbed Tanya and she also indicated the blade of the knife was 3½ to 4 inches. Defendant admitted that on the day after the incident, she told an assistant State's Attorney she was not afraid when she and Tanya punched each other. She also testified she was not afraid of Tanya, Monica, or Nicholas.

On redirect, she testified she voluntarily went to the police station the day after the incident and spoke with the police and an assistant State's Attorney. She told the assistant State's Attorney she was not "real afraid" of Tanya. Defendant testified she was not afraid at the time of the incident. When asked why she threw the knife away, she answered, "Because I was afraid at the time when I had the knife."

On recross, defendant admitted she knew she stabbed Tanya in the stomach at the time of the incident.

The State called Monica Campbell as a rebuttal witness who testified that before Tanya was stabbed, defendant stated, "I'll get your sister and you and whoever." Defendant hit Tanya in the face, and Tanya hit her back in the face. Monica saw defendant move toward Tanya with her hand and Monica pulled Tanya away. Monica testified she did not see Tanya and Felicia hit each other that day.

Simone Camp testified in surrebuttal that she did not hear defendant say, "I will get you and your family at all cost."

Both sides rested, and the judge held a jury instruction conference with the assistant State's Attorney and defendant's counsel. Defendant's counsel stated, "I haven't had a chance, although I know most of the instructions are pulled by the prosecution, but I haven't had a chance to look at any instructions yet." After a discussion of the State's instructions, defendant's counsel stated, "Well, I thought they were going to pull all the instructions. I didn't see any self-defense instruction." They discussed whether there was any evidence presented concerning self-defense. The next day after argument on the issue, the judge denied defendant's request for a self-defense jury instruction stating, "There has never been one utterance by her that, at the time she stabbed the victim, she was afraid."

The jury returned a verdict finding defendant guilty of two counts of aggravated battery and one count each of armed violence and attempted murder. Defendant now appeals.

OPINION

■ Defendant argues that the trial court erred when it denied her request for a self-defense jury instruction. The trial court denied the request, finding that defendant did not present sufficient evidence to justify the instruction.

Although the State did not raise the issue, the record in this case does not indicate that defendant tendered a self-defense jury instruction to the trial court. At the jury instruction conference, defendant's counsel admitted he had not prepared any instructions, and there is no statement in the transcript of proceedings that defendant tendered a self-defense instruction. Although jury instructions were included in the record on appeal, a proposed self-defense instruction was not included in the record.

Supreme Court Rule 366(b)(2)(i) provides that a party cannot raise on appeal the failure to tender a certain jury instruction unless that party tendered the instruction at the trial court level. (107 Ill. 2d R. 366(b)(2)(i).) Failure to tender an instruction can result in waiver of that issue on appeal. *People v. Brophy* (1981), 96 Ill. App. 3d 936, 422 N.E.2d 158.

In *Brophy*, the record indicated that defendant's counsel objected several times to the form of self-defense instructions at the trial court level and defendant also raised the issue in his post-trial motion. However, the record did not indicate that defendant tendered proposed instructions to the trial court. The appellate court found that defendant

clearly raised the issue at the trial court level and, therefore, it would be unfair to invoke the waiver rule.

Similarly here, the record discloses that defendant orally requested a self-defense instruction and that the parties argued the issue before the judge. Defendant again raised the issue in his post-trial motion. Although defendant's failure to tender a self-defense jury instruction to the trial court risked waiving the issue on appeal, we believe that under the circumstances of this case the court was adequately apprised of defendant's objection. We will, therefore, consider the issue of whether the trial court properly denied defendant's request for a self-defense jury instruction.

Section 7—1 of the Criminal Code of 1961 provides the circumstances under which a person may use self-defense:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.)

A defendant must affirmatively raise the issue of self-defense (Ill. Rev. Stat. 1985, ch. 38, par. 7—14) by presenting evidence "that unlawful force was threatened against the defendant; that the danger of harm was imminent; that defendant was not the aggressor; that defendant actually believed that danger existed and that the kind and amount of force used was necessary to avert that danger; and that defendant's beliefs were reasonable." (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 673-74, 450 N.E.2d 1290, 1294.) "[V]ery slight evidence" presented on the issue will justify instructing the jury on self-defense; however, jury instructions are not required on issues which are "wholly unrelated to the case but are based upon the merest factual reference or witness's comment." (See *People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41, 349 N.E.2d 31, 34.) Even when conflicting evidence is presented on the issue of self-defense, a defendant is entitled to a jury instruction on the issue because the credibility of witnesses is for the jury to determine. *People v. Dowdy* (1974), 21 Ill. App. 3d 821, 316 N.E.2d 33.

In the present case, defendant presented evidence that Tanya instigated the confrontation when she repeatedly shouted insults at defendant, Felicia, and Simone. Also, Tanya struck both defendant

and Felicia first. When Tanya attempted to strike defendant a second time, defendant pulled out a pocket knife and stabbed Tanya. When asked why she used the knife, defendant testified, "Because I was afraid, and it was three of them. I didn't know what she was going to do, which direction she was coming from next." She also testified she was afraid at the time she had the knife. Defendant testified she thought that she was going to get beaten. Although on further questioning defendant testified she was not afraid of Tanya or afraid at the time, any conflict in defendant's testimony must be resolved by the jury. The evidence presented satisfies the very slight evidence standard, and therefore, the jury should have been instructed on the issue of self-defense.

The State argues that defendant's act of stabbing Tanya was a "disproportionate response" to Tanya's actions and establishes that defendant was not acting in self-defense. However, the reasonableness of defendant's use of force and the amount of force used are questions of fact that must be resolved by the jury. *People v. Conwell* (1978), 64 Ill. App. 3d 995, 382 N.E.2d 64.

■ Defendant also argues she was not proven guilty beyond a reasonable doubt of attempted murder because there was insufficient evidence presented that she intended to kill Tanya.

When a defendant claims he was convicted with insufficient evidence, the evidence must be reviewed in a light most favorable to the prosecution and the court must determine whether any rational trier of fact could have found defendant guilty of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) A reviewing court will not reverse a criminal conviction unless the evidence presented was so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Young*, 128 Ill. 2d1, 538 N.E.2d 461.

■ A person commits the crime of attempt when with the intent to commit a specific offense, in this case murder, he performs any act which is a substantial step toward the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4.) To support a conviction for attempted murder, the State must prove that the defendant intended to kill his victim. (*People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) The specific intent to kill may be inferred from the circumstances, such as the character of the assault and the use of a deadly weapon. *People v. Treadway* (1985), 138 Ill. App. 3d 899, 486 N.E.2d 929.

■ In the present case, the evidence, viewed in a light most favorable to the prosecution, establishes that defendant told Tanya that she would kill Tanya and "anybody else." After a verbal altercation,

554

Tanya hit defendant. Defendant responded by stabbing Tanya with a pocket knife. There was testimony that defendant attempted to stab Tanya a second time but Monica pulled Tanya away. Also, there was testimony that the blade of the knife was between two inches and eight inches in length. The doctor who treated Tanya testified that Tanya's injury was life-threatening and required emergency surgery. The State, therefore, presented sufficient evidence that defendant possessed the requisite intent to kill and defendant was proven guilty beyond a reasonable doubt of attempted murder. Our determination removes the risk of subjecting defendant to double jeopardy when she is tried again. *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 494 N.E.2d 677.

Reversed and remanded.

MURRAY, P.J., and COCCIA, J., concur.