THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW REYES, Defendant-Appellant.

First District (4th Division)   No. 1—92—1806

Opinion filed August 5, 1993.

Leonard C. Goodman, of Genson, Steinback, Gillespie & Martin, of Chicago, for appellant.

Jack O'Malley, State's Attorney of Chicago (Renee Goldfarb, Annette

Collins, and Maureen E. McGee, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a bench trial the defendant, Andrew Reyes, was found guilty of attempted murder and aggravated battery. On appeal, Reyes asserts among other issues that the State has failed to prove his guilt beyond a reasonable doubt.

The testimony at trial revealed the following. On the evening of October 11, 1991, witnesses Patricia Mendoza and Rita Mendez attended a party in an alley behind 2616 Broadway in Blue Island, Illinois. Sometime after midnight, Mendoza, Mendez and some friends left the party in a black Ford Escort driven by a woman named Paula. Mendez rode in the front passenger seat and Mendoza sat in the back behind her. Less than a block from the party, the witnesses observed a fight in progress on the sidewalk. Two male occupants from the Ford exited the vehicle and joined the fray. During the altercation, the car remained stopped approximately 30 feet away.

At trial, Mendoza testified that she had not been drinking at the party. She stated that when the Ford pulled to a stop she observed the victim, Paul Smith, lying on the ground. A "bunch of guys" were beating him up. Mendoza recognized two of the men in the group as Brian Parker and the defendant, Andrew Reyes. She did not remember what Reyes was doing: whether or not he was hitting or kicking the victim or whether he was still on the scene when the witnesses left. She did not see him leave the area; however, she also did not remember seeing him after her initial observation. She also did not remember the two male occupants of her group returning to the vehicle.

Mendoza admitted that in her testimony before the grand jury, she had answered "[y]es" when presented with the question: "[D]id you see Andrew Reyes, Buck, kicking this man?" Mendoza asserted at trial that her grand jury testimony was a lie. She admitted that she considers Reyes her friend and that at one time he lived in her home. Mendoza also testified that her position in the Ford was such that in order to see the fight, she had to look from the rear seat across through the driver's side window. The side windows of the Ford were heavily tinted. Mendoza did not watch the fight during its entire progress. She did see others join the altercation after it had started.

Rita Mendez testified at trial that she consumed 15 beers at the party. Mendez stated that from her position in the passenger seat of

the car she saw people pushing and shoving Smith. She saw Reyes hit Smith in the chest and arms with his hands. Smith was pushed down onto the ground and people began kicking him. Mendez did not see Reyes hit or kick Smith after he was prone. She did not know if Reyes left the scene during the altercation. She did not see him leave. Mendez saw one of the participants, Brian Parker, pick up a city garbage can and throw it at Smith. She did not remember seeing Reyes at that time. She stated that he could have been there. Two weeks after the beating, Mendez gave the names of the defendant and the two male occupants of her vehicle to the police. Mendez testified that the police threatened her with prosecution if she did not provide the names of those participants she could identify.

Mendez admitted that before the grand jury she testified that after Smith was pushed down she saw everybody jump on him and hit and kick him. Mendez answered "[y]es" when, during the grand jury hearing, she was presented with the question: "Was Andrew Reyes kicking him?" At trial, Mendez stated that the question was a "misunderstood question." Mendez also testified that while watching the altercation she saw people coming and going from the scene. She stated that some people left before the victim was knocked to the ground. Mendez testified that Reyes could have been one of those who left after Smith was knocked to the ground.

Assistant State's Attorney Dan Reedy also testified at trial. Reedy stated that on October 25, 1991, he met with the defendant. Reyes told Reedy that on the night of the crime he and Glen Santoyo left the party together. As they walked down the street, Smith walked toward them. As the parties approached each other, Smith muttered something to Reyes and the two began to fight. Reyes knocked Smith to the ground. Other people from the party arrived and started to beat Smith as he lay on the ground. At this point Reyes walked away. Reedy testified that Reyes told him that he was present during the beating. Reedy also testified that he wrote a summary of his interview with Reyes. His summary states: "Mr. Reyes admits being at the scene, pushing the victim down with Glen Santoyo and began walking away from him as he sat on the ground. *** [A]s he walked away, he saw Carlos Lopez, Antulio Esparza." The summary ends in the unfinished sentence.

Andrew Reyes testified on his own behalf. He stated that while at the party he consumed between three to five beers. He left the party with Glen Santoyo. They were walking westbound on Broadway when Smith approached them walking eastbound. As they passed Smith, he mumbled "fucking spick" to Reyes. When Reyes asked Smith whom he was referring to, Smith replied, "You two." Reyes testified

that Smith then stumbled into him and Reyes pushed Smith. Smith pulled out a shiny object, Santoyo grabbed Smith's arm, and he and Reyes pushed Smith to the ground. Other people from the party arrived on the scene, and 10 to 15 seconds later, Reyes told Santoyo, "Let's get out of here," and they both left. Reyes did not converse with any of the others. He stated that although he was initially afraid of Smith, by the time the others arrived he did not believe that Smith posed any threat to him. Smith never struck Santoyo or Reyes with the shiny object.

Reyes testified that he knew the others would beat Smith and he did nothing to prevent them from doing so. Reyes stated that he did not at any time strike Smith with a closed fist or kick him. Two weeks after the beating, after learning that they were looking for him, Reyes presented himself to the police for questioning.

At trial, the parties stipulated that after the beating, Paul Smith remains in a vegetative state, suffering from severe brain dysfunction. The parties also agreed that a knife sheath was found on Smith. The parties also stipulated that the tinted windows of the Ford are light enough to see through if a source of light comes through the back windows of the vehicle. The grand jury testimony of Patricia Mendoza and Rita Mendez was admitted into evidence.

The court pronounced Reyes guilty of attempted murder and aggravated battery. Reyes appeals his conviction, asserting among other issues that the State failed to prove him guilty beyond a reasonable doubt. Essentially, Reyes asserts that he cannot be held accountable for attempted murder or aggravated battery if the State does not prove that after his initial confrontation with Smith, to which he admits, Reyes further participated in beating Smith. Reyes argues that the only evidence that he joined the others in beating and kicking Smith is the grand jury testimony of Mendoza and Mendez which the witnesses recanted at trial. Reyes cites to *People v. Parker* (1992), 234 Ill. App. 3d 273, 600 N.E.2d 529, a case in which the appellate court reversed a conviction wherein the sole evidence of the defendant's guilt consisted of the prior inconsistent statements of three witnesses. In *Parker* the witnesses at trial directly contradicted their prior statements and offered testimony exculpating the defendant. Reyes argues that like the prior testimony considered in *Parker*, the grand jury testimony of Mendoza and Mendez must be considered severely impeached and therefore insufficient as the only evidence used to convict him.

The State's response to Reyes' argument is that the grand jury testimony of Mendoza and Mendez was not "severely impeached" by their trial testimony because the witnesses testified at trial that they

recognized Reyes as one of the people involved in the fight. Mendez stated that she saw Reyes fight Smith "with everybody else." Further, the State argues, State's Attorney Reedy testified that Reyes told him he was present during the beating.

While admitting that mere presence at the scene is not enough to make the defendant a principal, the State asserts that at the least Reyes is accountable because he began the confrontation, did not disapprove or oppose the crime, and left the scene without phoning the police or an ambulance. The State asserts that from these circumstances it may be inferred that Reyes had the requisite intent to kill Smith that supports a finding that he was at the least an accessory to the crime. The State cites to *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174, in which the Illinois Supreme Court stated that active participation is not a requirement for the imposition of guilt upon a theory of accountability, and that evidence of the events surrounding the perpetration of the crime may circumstantially establish the guilt of an accessory. *Reid*, 136 Ill. 2d at 61, 554 N.E.2d at 190.

Viewing the evidence in a light most favorable to the prosecution, we believe the State's proof in this case to be so unsatisfactory that there exists a reasonable doubt that Reyes is guilty of attempted murder and aggravated battery. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In order to support a conviction for attempted murder, the State must prove that Reyes acted with the intent to kill Smith. (*People v. Tyler* (1989), 188 Ill. App. 3d 547, 544 N.E.2d 1077.) Specific intent may be inferred from the character of the assault. (*People v. Tyler*, 188 Ill. App. 3d 547, 544 N.E.2d 1077.) We agree with the State that in kicking and beating Paul Smith while he lay outmanned on the ground, a group of people perpetrated an assault upon Smith of a brutal, vicious, and murderous character. The State has not sustained its burden, however, of proving that defendant Reyes was one of that group.

The only evidence to contradict Reyes' assertion that he did not participate in the group beating is the grand jury testimony of Mendoza and Mendez. The credibility of this testimony is greatly reduced by the fact that both witnesses later disavowed their grand jury statements. Further, the statements themselves were not detailed accounts of Reyes' participation, but rather one-word responses to the prosecutor's leading question, "[D]id you see Andrew Reyes *** kicking this man?" Mendez's assertion that the police coerced her into identifying participants in the assault was uncontroverted at trial.

At trial, both Mendoza and Mendez testified that they could not

remember seeing Reyes kick Smith or hit him when he was on the ground. They both admitted that Reyes may not have been on the scene during the entire incident. The witnesses' testimony suggests that from a less than ideal vantage point, they observed a general melee in which people were coming and going. Mendoza testified that she did not watch for the entire duration of the incident. Mendez admitted she had consumed 15 beers at the party.

The only other testimony offered at trial other than Reyes' was that of State's Attorney Reedy. Reedy's written summary of his interview with Reyes supports Reyes' contention that he walked away from Smith after he pushed him to the ground. Reedy also testified that Reyes told him that he was present for the beating. As the State has admitted, however, mere presence at the scene is not enough in itself to render the defendant accountable. (*People v. Mitchell* (1973), 12 Ill. App. 3d 960, 299 N.E.2d 472.) Nor is it enough that the defendant knows that a crime is being committed, or flees from the scene. *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174.

Unlike the defendant in *People v. Reid,* the case that the State cites in support of its accountability argument, Reyes' participation did not include any planning stage to the crime. It is uncontroverted that the conflict between Reyes and Smith erupted spontaneously after a hostile verbal exchange. Reyes neither directed anyone's involvement nor acted at the behest of any other party. Further, the State has not argued that after the crime Reyes maintained a close affiliation with those who beat Smith. For these reasons, we do not believe that the possibility that Reyes remained on the scene after his initial confrontation with Smith did not dissuade the others from beating Smith, and left without phoning authorities is enough in itself to convert mere presence at the scene to aiding or abetting. See *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174. Also see *People v. Mitchell* (1973), 12 Ill. App. 3d 960, 299 N.E.2d 472 (defendant not accountable for murder where, while defendant engaged in a fight with victim, defendant's brother shot and killed victim).

Viewing the evidence in a light most favorable to the prosecution, we believe that because the State's sole evidence of Reyes' guilt for attempted murder is the disavowed prior testimony of Mendoza and Mendez, the State has failed to prove its case beyond a reasonable doubt.

The State maintains that if we do not uphold Reyes' conviction for attempted murder, we must at least remand this case for sentencing on the charge of aggravated battery. Citing to section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8)), the State argues that the defendant committed a

battery on a public way and is therefore guilty of aggravated battery. The only evidence at trial of the original confrontation between Smith and Reyes was the testimony of Reyes and the statement Reyes gave to Reedy. Reyes admitted shoving Smith after Smith insulted him and stumbled into him. Reyes testified that Smith displayed a shiny object, after which Reyes pushed Smith to the ground. It was stipulated at trial that a knife sheath was found on Smith. Legal justification is a defense to a charge of battery. Because Reyes' testimony regarding his limited confrontation with Smith was uncontroverted, we do not believe the State has proved beyond a reasonable doubt that Reyes is guilty of aggravated battery. Ill. Rev. Stat. 1991, ch. 38, par. 12—3(a).

For these reasons, we reverse the defendant's conviction for attempted murder and aggravated battery. As we have reversed this case on the basis of the State's failure of proof beyond a reasonable doubt, we do not reach the other issues raised by the defendant.

Reversed.

JOHNSON and HOFFMAN, JJ., concur.