**Maurice GREEN, Petitioner–Appellant,**

v.

**Howard PETERS, III, Director, Illinois Department of Corrections, Respondent–Appellee.**

No. 92–2856.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1993 *.

Decided Sept. 23, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Nov. 30, 1994.

---

* This case was briefed separately but argued together with *Carter v. DeTella,* No. 92–2978 [36 F.3d 1385]; *Cuevas v. Washington,* No. 92–3090 [36 F.3d 612]; *Rosa v. Peters,* No. 92–3258 [36

Before FAIRCHILD, COFFEY and RIPPLE, Circuit Judges.

FAIRCHILD, Circuit Judge.

Petitioner-appellant Maurice Green ("Green") was convicted of murder, aggravated criminal sexual assault and unlawful restraint in Illinois state court following a jury trial. Green challenges the murder conviction, contending that instructions given his jury violated his federal due process rights. He appeals from a judgment of the district court denying his petition for a writ of habeas corpus. We affirm.

## I. BACKGROUND

### A. Facts [1]

On June 7, 1985, Green phoned M.H. to ask whether she had any cocaine. When M.H. said she did, Green asked if he could come to her apartment, she agreed, and he went over. While there, M.H. and Green used cocaine. Green gave M.H. money and asked her to buy more cocaine. Both left the apartment in search of drugs. After they bought some cocaine, the two separated but agreed to meet back at M.H.'s apartment, which they did. They split a package of cocaine, and used some. While M.H. was pacing, Green put a cocaine packet in his pocket. M.H. noticed that a packet was missing, Green said she must have miscounted, but M.H. disagreed. When Green attempted to leave, M.H. refused to let him go until she found the packet:

> As he stood there, [M.H.] "kind of grabbed at him" and he "kind of pushed her away." [M.H.] "did it again" and Green "in a playful manner" again pushed her away. When [M.H.] "came grabbing at him" a third time, Green grabbed a decanter off

Lawrence C. Marshall, Northwestern University Legal Clinic (argued), Donald S. Honchell, Office of Cook County Public Defender, Chicago, IL, for petitioner-appellant.

Terence M. Madsen, Steven Zick, Asst. Attys. Gen., Crim. Appeals Div., Chicago, IL, for respondent-appellee.

F.3d 625]; and *Everette v. Roth*, No. 92–4063 [37 F.3d 257].

1. We were unable to obtain the transcript from Green's trial. These facts are taken from Green's brief to the Illinois Appellate Court, which contains a more extensive discussion of the trial testimony than does his brief to this court.

One of the arguments Green makes to this court is that if a writ is not issued, we should remand this action for further proceedings because the district court did not review the trial transcript. The State ordered the transcript in the proceedings below. *See* March 31, 1992 Filing at 2. Apparently efforts in the district court were as unsuccessful as ours in obtaining the transcript. *See* July 2, 1992 Mem. Op. and Order at 5 n. 2. Green does not suggest, however, that the facts contained in the appellate court decision, which the district court relied on pursuant to 28 U.S.C. § 2254(d), are incorrect or incomplete. Nor does he explain what further proceedings the district court should engage in, when the transcript is unobtainable. We find no merit to Green's argument.

the table and hit her in the head. [M.H.] then "kind of fell into his arms" and he again struck her and she fell to the floor. Green's State Appellate Br. at 25 (citing R. at 481–483, 497–503).

Green sat on the bed to cook some cocaine. He felt M.H.'s foot touch him, and in a frightened response, hit her on the head with a bottle wrapped in brown paper at least three or four times. He then left the bedroom with M.H.'s handgun, and went to her daughter's bedroom, where he woke up the daughter and engaged in what she testified to be unwanted sexual contact. He went between the daughter's bedroom and the kitchen, where he was cooking cocaine. The police eventually became involved, and Green surrendered about four hours after the police arrived.

The police found a large bottle caked with blood and broken glass by M.H.'s body. The medical examiner concluded that M.H. had been struck a number of times, and that the cause of death was "'head injuries due to multiple blunt traumas.'" State Appellate Br. at 10 (citing R. at 448).

## B. Jury Instructions

Green's jury was given the then current Illinois Pattern Jury Instructions on murder and voluntary manslaughter based on serious provocation.[2] Ill. Pattern Jury Instructions, Criminal IPI, No. 7.02 ("Issues in Murder") and No. 7.04 ("Issues in Voluntary Manslaughter—Provocation") (2d ed. 1981).[3]

The murder instruction listed the elements of murder and told the jury that the State must prove them beyond a reasonable doubt. The voluntary manslaughter instruction listed the elements of voluntary manslaughter and told the jury that the State must prove them beyond a reasonable doubt. The ele-

ments of voluntary manslaughter include all the elements of murder (except for murder while committing an offense), and also include the element (in Green's case) that defendant acted under a sudden and intense passion resulting from serious provocation by another (sometimes referred to as "mitigating" because, in a sense, it is a defense to murder).[4] The jury was not told that it could not convict of murder unless the State disproved the mitigating element beyond a reasonable doubt.

These instructions are the same as those considered in People v. Reddick, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), and Falconer v. Lane, 905 F.2d 1129, 1136 (7th Cir.1990), except that in those cases the jury was also instructed on voluntary manslaughter based on an unreasonable belief; that instruction placed the burden on the State to prove that the defendant acted in the unreasonable belief that circumstances existed that would have justified the killing.

In Reddick, the Illinois Supreme Court held that when these murder and voluntary manslaughter instructions are given without warning the jury that it could not convict of murder unless the State disproved the mitigating elements, they "erroneously state the burdens of proof on the issues of whether the defendants acted under either intense passions or unreasonable beliefs that their actions were justified." 122 Ill.Dec. at 5, 526 N.E.2d at 145. "These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it will have been proved by the defendant, not the People." Id. The court concluded that "grave error" had occurred. Id. at 7, 526

2. The Illinois statutes regarding murder and voluntary manslaughter were rewritten, effective July 1, 1987, to create the offenses of first degree murder and second degree murder.

3. While we do not have Green's trial transcript, the Illinois Appellate Court found and the parties agree that Green was instructed following these pattern instructions.

4. Under the relevant section of the Illinois Code

[a] person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed

. . . .

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

Ill.Ann.Stat. 1985, ch. 38, para. 9–2(a).

N.E.2d at 147.[5]

Subsequently, this court held that when the same instructions are given, they violate federal due process because a jury may have been left with the false impression that it could convict of murder even if there was a mitigating mental state. *Falconer*, 905 F.2d at 1136; *see also Verdin v. O'Leary*, 972 F.2d 1467, 1470 (7th Cir.1992); *Flowers v. Ill. Dep't of Corrections*, 962 F.2d 703, 705 (7th Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2954, 125 L.Ed.2d 656 (1993), *on remand,* 5 F.3d 1021 (1993); *Taylor v. Gilmore*, 954 F.2d 441, 450 (7th Cir.1992), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993), *on remand,* 4 F.3d 997 (1993) (Table); *United States ex rel. Fleming v. Huch*, 924 F.2d 679, 682 (7th Cir.1991); *Rose v. Lane*, 910 F.2d 400, 402 (7th Cir.), *cert. denied,* 498 U.S. 983, 111 S.Ct. 515, 112 L.Ed.2d 526 (1990).

### C. Procedural History

On direct appeal, Green claimed that the instructions were error under *Reddick.* The Illinois Appellate Court agreed, but determined that the error was harmless because it did not believe that a reasonable jury would have found that Green acted out of serious provocation, and even if there was provocation, "it was in no way in proportion to the manner in which defendant retaliated." *People v. Green*, 209 Ill.App.3d 233, 154 Ill.Dec. 92, 96, 568 N.E.2d 92, 96 (1991). The court concluded that the jury would have convicted of murder even if there was no instructional error. The Illinois Supreme Court denied Green's petition for leave to appeal.

Subsequently, Green filed a petition for a writ of habeas corpus in federal district court. The district court denied Green's petition, concluding that the error was harmless beyond a reasonable doubt because there was "no evidence supporting Green's conten-

tion that he killed M.H. as the result of her serious provocation." July 2, 1992 Mem.Op. and Order at 7. Green filed a motion to alter or amend, which the district court denied. This appeal followed.

## II. DISCUSSION

### A. Fair Presentment

■ In *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983), this court held that a state prisoner seeking habeas relief is barred from raising a claim he had failed to raise on a state court appeal, unless he can show cause and prejudice. *See Murray v. Carrier*, 477 U.S. 478, 489–490, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). A petitioner's claim "must have been presented in such a way as to fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir.1984).[6]

Earlier, in the context of exhaustion of state remedies, the Supreme Court had said that "the federal claim must be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "[W]e do not imply that respondent could have raised ... [his federal constitutional] claim only by citing 'book and verse on the federal constitution.' ... [citations omitted]. We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." *Id.* at 278, 92 S.Ct. at 513.

In his state appellate brief, Green argued that the instructions "failed to correctly alert the jurors on the proper burdens of proof." Green's State Appellate Br. at 32. Green only cited *Reddick* in support of his argument: "[s]uch a placement [by the voluntary manslaughter instructions of the burden of proof on the State to prove that Green acted

---

**5.** The Illinois Pattern Jury Instructions were rewritten to conform to *Reddick.*

**6.** In *Sullivan,* this court concluded that petitioner waived his right to submit his due process claim in federal court because he did not present his due process argument to the state courts in the context of a federal constitutional claim, he never used the language "due process," he relied

on state cases which refer only to the "interests of justice," and the state appellate court opinion indicated that it discerned no due process implications.

For a list of factors to consider in determining whether a petitioner has fairly presented his federal claim, *see Sullivan,* 731 F.2d at 454 (including n. 9).

under a sudden and intense passion resulting from serious provocation by another] rendered the instruction invalid here on the same basis found by the Illinois Supreme Court in [*Reddick* ]...." *Id.*

The Illinois Appellate Court noted that Green's contention was "that the jury was improperly instructed on the burden of proof for voluntary manslaughter." *People v. Green,* 154 Ill.Dec. at 95, 568 N.E.2d at 95. The court went on to discuss *Reddick,* and found that any error was harmless. *Id.* at 96, 568 N.E.2d at 96.

In *Taylor v. Gilmore,* decided after *Falconer,* this court ruled that *Reddick* was grounded only in state law, with no ties to federal due process; "[a]ny indications to the contrary in our prior decisions are disavowed." [7] 954 F.2d at 449. It must follow that an argument, such as Green made to the appellate court, that the instructions were incorrect as to burden of proof, citing only to *Reddick,* did not fairly present a federal due process claim to the state court.

In *Verdin v. O'Leary,* a habeas petitioner claimed that the Illinois Pattern Jury Instructions violated the Due Process Clause because they had led "the jury to ignore constitutionally relevant, exculpatory evidence." 972 F.2d 1467, 1477 (7th Cir.1992). In state court he had not expressly claimed a violation of due process, but had argued that a refused instruction was necessary for the jury to understand the difference between murder and voluntary manslaughter. He only cited to state cases, none of which refer to the Due Process Clause or cite cases referring to the Due Process Clause. The State likewise did not refer to the Due Process Clause, and the appellate court did not reference constitutional grounds. This court concluded that there had been no fair presentment of his federal claim, and remanded to the district court to determine whether the petitioner's waiver of his federal claim could be excused under the "cause and prejudice" test or whether failure to consider his federal claim would result in a fundamental miscarriage of justice. *Id.* at 1483.

We conclude that Green failed to fairly present to the Illinois courts his claim that the instructions given his jury violated federal due process.[8] Green's challenge to the Illinois instructions on direct appeal was never framed or considered in federal constitutional terms. While remand for a determination of whether Green can demonstrate cause for and prejudice from his failure could appropriately follow (although Green makes no such request), it is unnecessary to do so, given the following discussion.

### B. Harmless Error

■ Green would like us to read *Falconer* broadly, as holding that when these murder and voluntary manslaughter instructions are given without alerting the jury to the need to determine whether the mitigating circumstance of provocation was present, and if present not to convict of murder, and the jury convicts of murder, there is always a denial of federal due process, and never

---

**7.** In *Falconer v. Lane,* this court had implied that a petitioner's citation to *Reddick* may constitute a federal constitutional challenge to the Illinois jury instructions, noting that in *Reddick,* "the Court obviously considered the errors resulting from the invalid instructions to be of constitutional magnitude." *Falconer,* 905 F.2d at 1134. The petitioner in *Falconer* did argue to the Illinois Supreme Court that the instructions deprived her of "due process." The panel in *Falconer* noted that even if the petitioner's claim was interpreted as brought under the Illinois Constitution's Due Process Clause, such a claim would be "functionally identical to a federal claim," and therefore her federal claim was fairly presented. *Id.*

Additionally, in *Rose v. Lane,* a panel of this court stated that "*Reddick* creates a federal claim through *In re Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ]...." *Rose,* 910 F.2d at 401 n. 1.

**8.** Because the record does not include Green's petition for leave to appeal to the Illinois Supreme Court, and because neither party discusses that petition, we do not know how Green framed his challenge to the instructions at that stage. This is irrelevant, however, because submitting a new claim to a state's highest court in a petition for discretionary review does not constitute fair presentment. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

harmless error, no matter how slight the evidence of provocation.[9]

Several considerations militate against so broad a reading. First, the court in *Falconer* spoke in terms of a possibility that a jury would improperly convict of murder, and suggested that there was substantial evidence that the defendant, who attempted to prove that she killed in self-defense, did have a mitigating mental state:

> The central point is that the jury *might* have decided to convict the petitioner of murder because the State proved that she intentionally killed another without a reasonable belief that she acted in self-defense—*despite clear proof* that the petitioner was provoked to murderous passion by the victim or that the petitioner held an unreasonable belief that she was justified in killing the victim.

*Falconer*, 905 F.2d at 1136 (emphasis added).

Additionally, even though in several cases we have noted the "inherently prejudicial" nature of the instructions,[10] all subsequent decisions of this court which have found *Falconer*-type denials of due process have considered whether the error was harmless and have evaluated the evidence in order to determine that it was not. *See Flowers v. Ill. Dep't of Corrections*, 962 F.2d at 705 ("Our review of the record confirms the state trial judge's apparent belief, given that he tendered a voluntary manslaughter instruction to the jury, that the evidence presented at trial could support either a voluntary manslaughter verdict or a murder verdict. Consequently, we conclude that the error at Flowers' trial was not harmless beyond a reasonable doubt ...," *id.* at 706); *Taylor v.*

*Gilmore*, 954 F.2d at 450 (considering "whether the erroneous jury instructions ... were harmless beyond a reasonable doubt," *id.* at 454) ("Our review of the record confirms the trial judge's belief ["that there was enough evidence in the record to support mitigation to manslaughter"] ...," *id.*) (noting that "[h]ad there been insufficient evidence in that regard, the judge would not have been obligated to [give the manslaughter instruction] ...," *id.*); *United States ex rel. Fleming v. Huch*, 924 F.2d 679 ("A closer question than whether the jury instructions violated due process is whether that constitutional violation was harmless beyond a reasonable doubt," *id.* at 683) (concluding that because there was "substantial and uncontroverted" evidence of battered wife syndrome, which was basis for self-defense theory, the instructional error was not harmless, *id.*); *Rose v. Lane*, 910 F.2d at 402 ("we must decide ... whether the trial court's constitutional error was harmless," *id.* at 403) (concluding that because there was evidence that the defendant believed he was acting in self-defense, a jury might not have convicted him of murder if properly instructed, *id.*). Thus, we have interpreted *Falconer* as permitting consideration of whether *Falconer*-type errors were harmless in light of the evidence before the jury.

Finally, the Supreme Court has decided that "the *Kotteakos* harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type." *Brecht v. Abrahamson*, — U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).[11] There must

---

9. In *Falconer*, a panel of this court concluded that "[a]s the Eighth Circuit stated in finding constitutionally faulty jury instructions: 'Such error [a jury verdict based on an instruction that allows it to convict without properly finding the facts supporting each element of the crime] is not corrected merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed. The error cannot be treated as harmless.'" 905 F.2d at 1137 (citing *United States v. Voss*, 787 F.2d 393, 398, *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986)).

10. *Rose v. Lane*, 910 F.2d at 402–403 (noting that *Falconer* found the instructions to be "gravely erroneous" and "inherently prejudicial"); *United*

*States ex rel. Fleming v. Huch*, 924 F.2d at 683 (recognizing that *Falconer* and *Rose* found that the error was "inherently prejudicial"); *Taylor v. Gilmore*, 954 F.2d at 454 (recognizing that *Falconer*, *Rose* and *Fleming* found the instructions were "inherently prejudicial").

11. While the issue in *Brecht* was whether a habeas petitioner was entitled to relief because the state improperly used his post-*Miranda* silence for impeachment purposes, the harmless error standard announced in *Brecht* applies to instructional error. *See Libby v. Duval*, 19 F.3d 733, 739–740 (1st Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 314, — L.Ed.2d — (1994); *Kontakis v. Beyer*, 19 F.3d 110, 116 (3d Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 215, —

be more than "a ' "reasonable possibility" ' that trial error contributed to the verdict"; habeas petitioners are entitled to habeas relief based on trial error only if the error resulted in "actual prejudice." *Id.* at ——— ———, 113 S.Ct. at 1721–1722. The question is whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

In the present case, we have Green's description that M.H. grabbed him and in response, he pushed her away "in a playful manner." She had perhaps implied an accusation that he had secreted a packet of cocaine. When she grabbed him again, he hit her once, and then again as she was falling. Then, while M.H. was lying on the floor, her foot touched Green; Green responded by again hitting her on the head a number of times, killing her. The Illinois Appellate Court did "not believe that a reasonable jury would have found that defendant acted out of serious provocation...." 154 Ill.Dec. at 96, 568 N.E.2d at 96. District Judge Conlon concluded that there was "no evidence supporting Green's contention that he killed M.H. as the result of her serious provocation." We discern no evidence that Green "acted under a sudden and intense passion resulting from serious provocation by" M.H., and Green does not suggest any such evidence.[12] In this case we find no possibility of prejudice as a result of these instructions. Any error in giving them was harmless.

The judgment of the district court is AF-FIRMED.

L.Ed.2d —— (1994); *O'Neal v. Morris,* 3 F.3d 143, 145–147 (6th Cir.1993), *cert. granted in part,* —— U.S. ——, 114 S.Ct. 1396, 128 L.Ed.2d 70 (1994) (question presented: "Does state have burden of proving constitutional error to be harmless under *Brecht v. Abrahamson?* " 62 U.S.L.W. 3680). *But see Suniga v. Bunnell,* 998 F.2d 664, 667 (9th Cir.1993).

Prior to *Brecht,* the harmless error standard was whether federal constitutional error "was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We apply *Brecht* here. *See Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct.

RIPPLE, Circuit Judge, concurring in the judgment.

The majority correctly determines that the petitioner failed to present properly the federal claim to the state courts. Rather than remand the case for a determination of whether the petitioner can establish cause and prejudice, the court affirms the judgment on the ground that the instructional error was harmless. I agree that the instructional error was harmless in this case. However, I reach that conclusion by a different path than my brothers and therefore set forth in the following paragraphs the reasoning that leads me to this conclusion.

At the outset, it must be stressed that the analysis that follows presupposes the continued vitality of *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), in this circuit despite the Supreme Court's critique of that decision in *Gilmore v. Taylor,* —— U.S. ——, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). Until that matter is raised and briefed in plenary fashion, *Falconer* remains the law of the circuit and we must proceed accordingly.

In *Falconer,* a panel of this court held that the Illinois pattern murder instructions, earlier invalidated on state law grounds by the Illinois Supreme Court in *People v. Reddick,* 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), also violated the Due Process Clause of the Fourteenth Amendment. The federal infirmity identified by this court in *Falconer* therefore was different from the state ground relied upon by the state court in *Reddick.* In *Reddick,* the Supreme Court of Illinois had taken the view that, as a matter of state law, the instructions should have placed on the government the burden of dis-

838, 844, 122 L.Ed.2d 180 (1993). Even if we were to apply the *Chapman* standard, we would conclude that the error was harmless beyond a reasonable doubt.

12. We are not bound by the trial court's decision to tender the instruction. Even though a trial judge has some doubt whether there is evidence calling for the instruction, the judge may well decide to play it safe and instruct on an offense less than murder. *See e.g., People v. Tyler,* 188 Ill.App.3d 547, 136 Ill.Dec. 302, 305, 544 N.E.2d 1077, 1080 (1989) (" 'Very slight evidence' presented on the issue will justify instructing the jury on self-defense...." (citation omitted)).

proving beyond a reasonable doubt a mitigating mental state. By contrast, this court acknowledged that, as a matter of federal constitutional law, the burden of proof with respect to an affirmative defense may be placed on either party.[1] It held, however, that the pattern instructions were infirm because, although the murder instructions preceded the voluntary manslaughter instructions, they did not explicitly tell the jury that it could not return a murder verdict if it found that the defendant possessed a mitigating mental state. It was possible, concluded the court, for a jury to find that a defendant was guilty of murder without ever considering whether he was entitled to the voluntary manslaughter conviction. Explicit misdirection on this scale, concluded the court, violates the Due Process Clause. In reaching this conclusion, the court relied principally on the Supreme Court's holding in *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In that case, the Court had held that federal courts may not overturn a state conviction on the ground that the jury instructions were erroneous unless those instructions can be said to have infected the entire trial. *Id.* at 147, 94 S.Ct. at 400.

The issue before us today is whether the error identified in *Falconer* can be considered harmless. If it can be so considered, we must determine the applicable standard in making such a determination. In *Brecht v. Abrahamson*, —— U.S. ——, ——, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993), the Supreme Court, through the pen of the Chief Justice, held that "trial error" ought to be evaluated on habeas review under the standard enunciated earlier in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). "Trial error," the Chief Justice wrote, " 'occur[s] during the presentation of the case to the jury.' " *Id.* —— U.S. at ——, 113 S.Ct. at 1717 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991)). It is susceptible to harmless error analysis because it may be quantitatively assessed in the context of the other evidence that is presented at trial. *Id.* As the Supreme Court set

forth in *Brecht*, under this standard, a reviewing court must determine whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht*, —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253). "At the other end of the spectrum," continued the Chief Justice, are structural defects in the trial mechanism that "infect the entire trial process," *id.*, —— U.S. at ——, 113 S.Ct. at 1717, and therefore require automatic reversal. "Trial error" usually involves the admissibility of evidence or the propriety of the argument of counsel. Here, however, we deal with another form of error that arises in the course of trial—instructional error. It is well established at this point that instructional error must be assessed quite differently from other errors that arise in the course of trial. Some are "structural" in nature and not at all subject to harmless error analysis. *See Sullivan v. Louisiana*, —— U.S. ——, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) (holding that a constitutionally deficient reasonable-doubt instruction cannot be harmless error). On the other hand, other instructions that misstate the task of the jury in assessing the evidence before it are subject to harmless error analysis. *See Carella v. California*, 491 U.S. 263, 266–67, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (holding that an instruction that a rental car kept 5 days past the rental agreement "shall be presumed to have been embezzled" impermissibly shifts the burden of proof, but is subject to harmless error analysis); *Rose v. Clark*, 478 U.S. 570, 582, 106 S.Ct. 3101, 3108, 92 L.Ed.2d 460 (1986) (holding that an instruction that impermissibly shifts the burden of proof on the issue of malice in a murder prosecution is subject to harmless error analysis); *Sandstrom v. Montana*, 442 U.S. 510, 526–27, 99 S.Ct. 2450, 2460–61, 61 L.Ed.2d 39 (1979) (holding that constitutionally erroneous instruction establishing conclusive presumption that perpetrator intends the ordinary consequences of voluntary acts is subject to harmless error analysis). These cases make clear that, as the majority holds, *Falconer* error is subject to harmless error analysis. However, as I shall detail in the paragraphs that

---

**1.** *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

follow, application of the harmless error rule in these cases poses problems, both conceptual and practical, not faced when we deal with other types of error that arise in the course of trial.

As in the case of instructions that establish mandatory presumptions or instructions that shift the burden of proof, it is indeed difficult to assess the effect of an instruction such as that at issue in *Falconer* and the present case that explicitly skews the jury's decision-making process so that it might not even consider the mitigating circumstances that would result in acquittal of the principal charge and conviction only on the lesser included offense. When the traditional formulation of the harmless error test of *Kotteakos* is applied uncritically to instructional error of the type presented by *Falconer*, the contours of harmless error analysis are radically expanded. Federal habeas courts consequently are placed in the position of supplying missing factual findings of the jury and, indeed, of relying on evidence to uphold the conviction that the jury may not have considered. *See Libby v. Duval*, 19 F.3d 733, 741 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 314, —— L.Ed.2d —— (1994) (Stahl, J., dissenting).

In the case of the usual forms of trial-type error such as erroneously admitted evidence or improper argument to the jury, the sort of quantitative assessment contemplated by *Brecht* is easily accomplished by the reviewing court. The court has before it the entire record and can easily determine whether the fact established by the erroneously admitted evidence was nevertheless established to an overwhelming degree by other lawfully admitted evidence; a judgment therefore can be made as to whether the erroneously admitted evidence had a substantial and erroneous influence on the jury's verdict. Such an approach is far more difficult when the appellate court is called upon not to assess the effect of information that the jury had before it but to assess the effect of the jury's not having considered relevant information or not having made a finding which the law requires it to make.

As I have already noted, it is clear from the established precedent that the difficulty in applying the standard *Kotteakos* approach does not mean that these instructional errors ought not be evaluated under a harmless error analysis. Nor does it mean that the holding of *Brecht* ought to be inapplicable in such instances. It simply means that an analytical approach, tailored more precisely to the nature of the particular error on the fairness of the proceedings, must be found. As Judge Stahl of the First Circuit has pointed-ed out in his dissenting opinion in *Libby*, Justice Scalia's concurring opinion in *Carella v. California*, 491 U.S. 263, 267–73, 109 S.Ct. 2419, 2421–24, 105 L.Ed.2d 218 (1989), offers a formulation that is of considerable help in this situation.[2] Because the inquiry is not whether guilt can be established from the record, but whether guilt was ever found properly by the jury, a reviewing court must determine that the instruction that could have misdirected the jury's efforts in such a drastic way did not play a role in its verdict. *Carella*, 491 U.S. at 270, 109 S.Ct. at 2423 (Scalia, J., concurring). Under this approach, instructional error that so grossly misdirects the jury's inquiry is harmless when it can be established that the facts that the jury necessarily found pursuant to other correct instructions are so closely related to the fact to be proved by the erroneous instruction that a rational jury could not have found the former facts without also finding the fact addressed by the erroneous instruction. In the case of an impermissible presumption, for example, the predicate acts established by correct instructions may so conclusively establish the requisite intent that no rational jury could conclude that the defendant committed the criminal act in question, but did not have the intent that was also the subject of the impermissible presumption. *See Carella*, 491 U.S. at 272, 109 S.Ct. at 2424 (discussing *Rose*, 478 U.S. at 579, 106 S.Ct. at 3106). In cases such as the one before us, in which the jury's inquiry was affirmatively skewed so that the jury might find the defendant guilty of murder without even considering the lesser included offense

---

**2.** Justice Scalia was addressing in *Carella* an erroneous instruction that created a conclusive presumption. He noted, however, that his analy-sis is applicable to other situations where the jury has been deprived of its fact-finding role. *Carella*, 491 U.S. at 270, 109 S.Ct. at 2423.

of manslaughter, the error might also be harmless when the evidence before the court simply did not permit a finding of manslaughter.

While the course of this circuit's approach to harmless error in the *Falconer* situation has perhaps not been a seamless garment, our cases, read as a whole, do recognize these principles. As the majority suggests, our cases do contain language that, taken alone, suggests that *Falconer* error can never be harmless. Notably, however, each of these cases did explore the possibility that the evidence of record might not reasonably raise the lesser included offense of manslaughter. *See Taylor v. Gilmore*, 954 F.2d 441, 454 (7th Cir.1992), *rev'd on other grounds*, — U.S. —, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (noting that the error was "inherently prejudicial," but also examining the record to determine that the lesser included offense was raised by the evidence); *Fleming v. Huch*, 924 F.2d 679, 683 (7th Cir.1991) (same); *Rose v. Lane*, 910 F.2d 400, 403 (7th Cir.), *cert. denied*, 498 U.S. 983, 111 S.Ct. 515, 112 L.Ed.2d 526 (1990) (same). A later case makes no such reference to the impossibility of harmless error but, notably, approaches the harmless error analysis by asking whether the lesser included offense was reasonably raised by the evidence. *See Flowers v. Illinois Dep't of Corrections*, 962 F.2d 703, 706 (7th Cir.1992), *vacated on other grounds*, — U.S. —, 113 S.Ct. 2954, 125 L.Ed.2d 656 (1993). Our present Chief Judge followed a similar analysis when, writing for the court in *United States v. Kerley*, 838 F.2d 932 (7th Cir.1988), he held that the district court's error in not instructing the jury with respect to one element of the offense was harmless because the element was "not contestable." *Id.* at 939.

The foregoing approach may well result in a determination of harmless error in substantially fewer instances than in the usual "trial error" situation. However, this difference in result is due to the difference in the problem presented. The Supreme Court has ac-

knowledged that all errors cannot be neatly classified as either "structural" or "trial" errors. In *Brecht*, the Chief Justice, referring to Justice White's earlier observation in *Fulminante*,[3] noted that "structural" and "trial" errors were at opposite ends of the *"spectrum"* of constitutional errors. *Brecht*, — U.S. at —, 113 S.Ct. at 1717 (emphasis added). Explicit misdirection to the jury on its responsibility to consider the evidence tending to support acquittal on the principal charge and conviction on the lesser included offense is an error very different from the admission of tainted evidence. That it must be treated differently by a reviewing court ought not be surprising.

Justice Scalia's approach to error of this sort was formulated prior to *Brecht*. It is clear, however, that his analysis is not dependent upon a particular formulation of the standard of review. The Justice's opinion is an explanation of the particular dangers presented by instructions that deprive the jury of its fact-finding role—an explanation that makes clear that such an alteration in the jury's function cannot easily be neutralized because it is far closer to a "structural" error than the typical trial-type error. Certainly, allowing the approach urged by Justice Scalia in *Carella* to survive *Brecht* is compatible with the principles of judicial restraint and federalism reemphasized in that opinion. As Judge Stahl points out, fact-finding by federal judges on habeas review is hardly evidence of judicial restraint. Nor is it required by a healthy concept of federalism. Federal courts are to respect the factual findings of the state courts,[4] not supplement them.

I now turn to the circumstances of the case before us. In this case, Mr. Green submits that error was committed by the trial court when it failed to give the appropriate instructions on the defense that he acted under a sudden and intense passion resulting from serious provocation by another. As the state court determined, the evidence of record simply does not reasonably raise this defense

---

3. *Arizona v. Fulminante*, 499 U.S. 279, 290–91, 111 S.Ct. 1246, 1254–55, 113 L.Ed.2d 302 (1991) (White, J., dissenting in part).

4. *See Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (per curiam) (holding that federal courts owe deference to the findings of fact of state courts on habeas review).

and therefore the failure of the state trial court to give adequate instructions on it does not warrant the intervention of a federal habeas court.