THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD K. CURTIS, Defendant-Appellant.

Fourth District    No. 4—97—0455

Argued May 14, 1998.—Opinion filed June 15, 1998.

Jon Gray Noll and Jeffrey T. Page (argued), both of Noll Law Office, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1997, following a bench trial, the trial court found defendant, Gerald K. Curtis, guilty of aggravated battery with a firearm, aggravated battery, and armed violence (720 ILCS 5/12—4:2, 12—4(a), 33A—2 (West 1996)). The court subsequently vacated the armed violence conviction. In May 1997, the court sentenced defendant to 12 years in prison for aggravated battery with a firearm and held that his aggravated battery conviction merged into his conviction for aggravated battery with a firearm.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt because the State's case essentially consisted only of a prior inconsistent statement admitted under section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1996)), which the witness disclaimed at trial; and (2) the evidence was not sufficient to show that defendant was guilty on a theory of accountability. We affirm.

## I. BACKGROUND

The evidence at defendant's trial showed the following. On July 1, 1996, Marie Hullum was sitting on the front porch of her house on 13th Street in Springfield, Illinois, with her granddaughter, Jovonsierre Franklin, her son, Gerald Hullum, and a woman. Around 8:15 p.m., a car stopped on the street across from Marie's house. Marie heard two shots. After the second shot, Jovonsierre screamed about her leg, and Marie took her inside. Jovonsierre had been shot and the bullet traveled through her left thumb and left leg and stopped in the back of her right leg.

Jerome Henderson testified at trial that he was about 1½ blocks away from the shooting when he heard the shots. He saw a small, grayish-blue, four-door car on 14th Street, but he did not see who was in the car and did not remember seeing defendant or his half-brother, Joshua Curtis (Josh). He testified that many people were in the area and he remembered hearing Reggie Thomas yelling something. Henderson, who was awaiting trial on several criminal charges, testified that the prosecutor had made no promises in exchange for his testimony.

Detective Tim Young testified that he had obtained a written statement from Henderson on July 5, 1996, after a police officer informed him that Henderson had information concerning the shooting. Henderson reviewed his written statement for accuracy before signing it. Young also testified that Henderson told him that defendant was not in the car.

Henderson testified at trial that he did not remember signing a statement after Young interviewed him on July 5, 1996. In his statement, Henderson had stated that he heard Thomas yelling, warning people that defendant and Josh were in the area and had guns. At trial, Henderson remembered telling Young that about the same time as he heard Thomas yelling, (1) he saw a small, grayish-blue, four-door car cross the intersection at 13th Street and Cass Avenue by Gerald Hullum's house; (2) Gerald was standing in front of his house; and (3) he heard four or five shots. He did not remember telling Young that (1) Terry Lee was driving the car and Josh was sitting next to her; (2) he saw Josh come out of the passenger's side window with a black automatic weapon in his hand and point it over the top of the car toward Gerald; (3) he saw several people standing around the area, including Marcus Poole; (4) he heard a girl scream; and (5) he saw Lee accelerate and drive away. The trial court admitted Henderson's statement regarding Thomas yelling "for the purpose of explaining Mr. Henderson's subsequent conduct but not substantively on the question of whether or not [defendant], in fact, had a gun."

Young also testified that Officer Scott Allin informed him that Poole had told him—before the incident resulting in his arrest—that he wanted to provide information about the shooting. Young interviewed Poole at the Sangamon County jail, where Poole was incarcerated for unrelated charges. Poole signed a written statement after reviewing it to ensure its accuracy. Young told Poole that he would talk to the State's Attorney's office and try to secure Poole's release in exchange for his cooperation; however, he did not promise that he would be able to secure Poole's release in exchange for his statement. Young testified that he talked to the State's Attorney's of-

fice on Poole's behalf the following day, and, as a result, Poole was released on a recognizance bond.

Poole testified at trial that (1) charges of aggravated battery and criminal trespass to real property were pending against him; (2) he had recently pleaded guilty to a reduced charge of robbery and been sentenced to probation; and (3) the prosecutor had made no promises regarding his guilty plea or his pending charges in exchange for his testimony.

Poole also testified that he had known defendant for about six years. On July 1, 1996, he was visiting a friend's house on 13th Street. He saw a blue car driven by a woman, but he did not see who was inside the car. He saw a handgun, heard a shot from inside the car, and ran. He heard about 11 shots. He denied seeing defendant or Josh in the car.

Poole further testified that he was arrested on July 4, 1996, on charges unrelated to the shooting. Shortly after his arrest, he talked to Young and told him that he would not talk about the shooting unless he could get out of custody. He then made and signed a written statement regarding the shooting.

Poole's signed statement read as follows:

"Last Monday night (07-01-96) I was walking down the street going to my cousins Gerald Hullum house 830 S. 13th St. I was a Milton Lacy's house 924 S. 13th St. and was on the way Gerald. As I was walking, I seen a dark blue car stop in the road facing South Grand. It was on the opposite side of the road. I was walking towards Cook St. I looked over at the car and saw a girl Teri Lee (spelling unsure) in the front seat driving. In the back seat was two guys [black males]. I know the guy in the back seat on the driver[']s side was Gerald Curtis. On the passenger side in the back seat was was his brother Josh Curtis. I saw Gerald Curtis take his hat off and he then took out a big black gun [and] pointed it out of the window. He turned the gun sideways and he started shooting at me. Josh Curtis then came out the car window with a gun and was shooting over the top of the car. I heard a little girl who was my neice [sic] screaming. I knew that she had been hit. I know that Gerald is the one who shot my neice [sic] cause Josh hadn't started shooting yet when my neice [sic] screamed. My brother Malcom was standing out in front of 924 S. 13th St. As Terri drove away they had to see my brother Malcom and they was shooting at my brother and they hit Milton in the leg. I took off running towards 14th St to get away from them. This happened because of something that happened about two months ago where he was shot."

At trial, Poole disavowed this statement, denied seeing Josh or defen-

dant in the car, and stated that he had lied when he made the written statement so that he would be released.

The trial testimony also showed that defendant had a bedroom at his mother's house where he stayed periodically; he was the only person who used that room. Josh also stayed at the house periodically and slept on a couch in the living room. The police searched the house and found two semiautomatic guns in the living room, a .40-caliber black Smith & Wesson Iberia and a .25-caliber Loricin. In defendant's bedroom, they found several boxes of ammunition, including a partial box of .40-caliber full metal jacket bullets that were consistent with the bullets in the Iberia's clip.

Scientific testing determined that the bullet recovered from Jovonsierre's leg was fired from the Iberia. Three spent cartridge cases found in the 900 block of 13th Street were extracted or fired from the Iberia and were consistent with the .40-caliber bullets in the box found in defendant's bedroom.

## II. SUFFICIENCY OF THE EVIDENCE WHEN THE CONVICTION IS BASED UPON A RECANTED PRIOR INCONSISTENT STATEMENT ADMITTED UNDER SECTION 115—10.1 OF THE CODE

### A. Standard of Review

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of the offenses of aggravated battery with a firearm and aggravated battery. Specifically, he contends that (1) the only evidence against him was Poole's statement to the police, which was admitted under section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1996)) and which he recanted during the trial; and (2) such evidence is not sufficient to sustain a conviction. We note that defendant does not appeal the trial court's admission of Poole's statement under section 115—10.1 of the Code.

We disagree with defendant's premise that the *only* evidence against him was Poole's recanted prior inconsistent statement. As the State points out, the bullet recovered from the victim's leg was fired from the Iberia which the police found during a search of defendant's home. That bullet and three cartridge cases found in the street where the shooting occurred were consistent with the .40-caliber bullets in the partial box of ammunition the police found in defendant's bedroom.

Nevertheless, even assuming *arguendo* the accuracy of defendant's characterization of the evidence, we still reject defendant's argument. We note that defendant cites some appellate court decisions which—he claims—suggest or hold that a recanted prior incon-

sistent statement admitted under section 115—10.1 of the Code is not sufficient to sustain a conviction. See *People v. Parker*, 234 Ill. App. 3d 273, 281, 600 N.E.2d 529, 534 (1992) (evidence not sufficient to support conviction where prior inconsistent statements by three State witnesses were impeached); *People v. Arcos*, 282 Ill. App. 3d 870, 875, 668 N.E.2d 1177, 1180 (1996) (evidence insufficient to sustain conviction where alleged eyewitness disavowed his previous out-of-court statements at trial); see also *People v. Reyes*, 265 Ill. App. 3d 985, 990, 638 N.E.2d 650, 654 (1993) (witnesses' disavowed grand jury testimony that defendant participated in the crime was not sufficient to support conviction). We are not convinced that these cases stand for the proposition defendant urges upon us, but if they did, we would decline to follow them.

Defendant asserts a now-discredited standard of appellate review in criminal cases that would shift depending upon the nature of the trial evidence. Some examples of these discredited standards are the following.

The standard of review for sex-offense cases formerly required that a victim's testimony be clear and convincing or substantially corroborated. *People v. Cole*, 193 Ill. App. 3d 990, 996, 550 N.E.2d 723, 728 (1990) (although a special concurrence in *Cole* questioned the validity of this special standard (*Cole*, 193 Ill. App. 3d at 998-99, 550 N.E.2d at 728-29 (Steigmann, J., specially concurring))). Shortly thereafter, in *People v. Roy*, 201 Ill. App. 3d 166, 558 N.E.2d 1208 (1990), this court refused to follow the "substantially corroborated or clear and convincing" standard in sex-offense cases, stating as follows:

> "[T]here is no additional requirement that in a case in which a sex offense is charged[,] the State must, in addition to proving the defendant guilty beyond a reasonable doubt, demonstrate either the evidence is substantially corroborated or the victim's testimony is clear and convincing. The testimony of no other category of crime victim is held to be automatically suspect or to require additional proof beyond the statutory requirements." *Roy*, 201 Ill. App. 3d at 185, 558 N.E.2d at 1221.

In *People v. Schott*, 145 Ill. 2d 188, 202, 582 N.E.2d 690, 696 (1991), the supreme court abolished the special standard, affirming *Roy*.

Cases involving circumstantial evidence have also been subject to a more stringent evidentiary standard in the past. Illinois Pattern Jury Instructions, Criminal, No. 3.02 (3d ed. 1992) (hereinafter IPI Criminal 3d) formerly included a second paragraph that read: "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." See IPI Crimi-

nal 3d No. 3.02, Committee Note. In *People v. Bryant*, 113 Ill. 2d 497, 510-11, 499 N.E.2d 413, 419 (1986), the supreme court rejected this "reasonable hypothesis of innocence" test for cases in which the evidence of guilt is entirely circumstantial, stating as follows:

> "'Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. *** If the jury is convinced beyond a reasonable doubt, we can require no more.'" *Bryant*, 113 Ill. 2d at 510-11, 499 N.E.2d at 419, quoting *Holland v. United States*, 348 U.S. 121, 139-40, 99 L. Ed. 150, 166-67, 75 S. Ct. 127, 137-38 (1954).

Noting that the presumption of innocence and the burden of proof remain the same regardless of the type of evidence involved in a case, the supreme court in *Bryant* held that the trial court should not use the second paragraph of IPI Criminal 3d No. 3.02 to instruct the jury because it suggests that a unique standard governs cases in which the evidence of guilt is circumstantial and that the burden of proof in those cases differs in some fundamental respect. *Bryant*, 113 Ill. 2d at 510-11, 499 N.E.2d at 419.

In *Schott*, the supreme court repeated its rejection of the reasonable hypothesis of innocence test and reiterated the standard of review for cases challenging the sufficiency of the evidence, stating as follows:

> "[W]here the evidence is claimed to be insufficient on review, *regardless of the nature of the evidence* [(emphasis added)], the reasonable doubt test *** should be applied. *** [C]riminal convictions are not to be overturned on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. The test to be employed on review ' "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.]" (Emphasis in original.) *Schott*, 145 Ill. 2d at 203, 549 N.E.2d at 697.

■ Statutes occasionally may require trial courts to impose a more stringent test for the admissibility of certain kinds of evidence. See *People v. Zwart*, 151 Ill. 2d 37, 600 N.E.2d 1169 (1992) (in which the supreme court applied the requirement of section 115—10 of the Code that hearsay evidence from a victim of a child sexual offense is admissible only if the time, content, and circumstances of the declarant's statements provide sufficient safeguards of reliability (725

ILCS 5/115—10(b) (West 1992))). But even under that specialized standard of *admissibility* of evidence at the trial level, the standard of *appellate review*—to apply when considering a defendant's claim that the evidence against him was not sufficient to sustain his conviction—remains the same as in any other criminal case on appeal—namely, whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find the essential elements of the crime proved beyond a reasonable doubt. *People v. Back*, 239 Ill. App. 3d 44, 74, 605 N.E.2d 689, 709 (1992).

■ Based on the supreme court's teachings, we conclude that no "suspect categories" of properly admitted evidence exist any longer so as to require a different standard of appellate review; thus, courts of review should no longer differentiate between types of evidence properly admitted before the trier of fact. When an accused is convicted and appeals, one standard applies to all evidence. Evidence of prior inconsistent statements—even if the declarant has recanted those statements—should be treated no differently.

In *People v. Bailey*, 265 Ill. App. 3d 262, 276, 638 N.E.2d 192, 201 (1994), the appellate court observed as follows:

> "Our legislature *** has seen fit, consistent with its legislative authority, to prescribe methods of proof and rules of evidence. Section 115—10.1 of the Code [(725 ILCS 5/115—10.1 (West 1996))] provides that under certain expressly enumerated circumstances, prior inconsistent statements can be utilized as substantive proof."

Once a jury or trial court has chosen to return a guilty verdict based upon a prior inconsistent statement, a reviewing court not only is under no obligation to determine whether the declarant's testimony was "substantially corroborated" or "clear and convincing," but it may *not* engage in any such analysis. To the extent that any of our sister districts have held otherwise, we deem such holdings inconsistent with supreme court teachings, and we decline to follow those decisions.

## B. The Recanted Prior Inconsistent Statement

Defendant next contends that Poole's written statement was not credible because Poole's trial testimony contradicted his out-of-court statement. Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence lie within the province of the trier of fact. *People v. Oaks*, 169 Ill. 2d 409, 457, 662 N.E.2d 1328, 1349 (1996). It is in a better position to assess witness credibility because it may observe the witnesses' demeanor and consider any conflicts or inconsistencies in their testimony.

In this case, Poole testified in court and was cross-examined by

defense counsel; the prior inconsistent statements related to events within his personal knowledge; and he acknowledged under oath that he gave those statements to Young on July 4, 1996.

■ The trial court, in weighing the evidence and assessing Poole's credibility, determined that he was telling the truth in his out-of-court statement and lying at trial. Based on the evidence in this case, we conclude that the court could have found defendant's prior inconsistent statement more believable than his trial testimony. See *People v. McBounds*, 182 Ill. App. 3d 1002, 1014, 536 N.E.2d 1225, 1234 (1989) (in which the trial court found witnesses' prior inconsistent statements more trustworthy than their trial testimony).

## C. The Absence of Certain Findings

Defendant also contends that "the trial court obviously did not determine that the physical evidence corroborated Marcus Poole's out-of-court statements, given the absence of any mention of such in its findings." Defendant bases this contention on the court's failing to single out certain evidence when it stated its verdict. We disagree.

■ The trier of fact in a bench trial is not required to mention everything—or, for that matter, anything—that contributed to its verdict. 155 Ill. 2d R. 366(b)(3)(i); see *Stony Island Church of Christ v. Stephens*, 54 Ill. App. 3d 662, 668, 369 N.E.2d 1313, 1318 (1977) (trial court's order need not include findings of fact or conclusions of law). In a jury trial, the jury provides no explanation whatsoever for its verdict. In a bench trial, even though it may be desirable for the trial court to explain its decision, the court's election not to comment or its failure to specifically mention certain portions of the testimony does not permit a defendant on appeal to claim that those portions not mentioned played no role in the court's determination. If the record contains facts which support an affirmance of the trial court's finding, the reviewing court may take those facts into account even if the trial court did not state it explicitly relied upon them. *Bailey*, 265 Ill. App. 3d at 278, 638 N.E.2d at 202.

The trial court here expressly stated that it considered Poole's prior statement and found it sufficient beyond a reasonable doubt. Other evidence we have already discussed supported the court's decision. Viewing the record before us, we conclude that the State presented sufficient evidence to sustain defendant's convictions.

## III. SUFFICIENCY OF THE EVIDENCE TO SUPPORT AN ACCOUNTABILITY THEORY

Last, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of the charges based on an accountability theory. He bases this argument on the remarks of the trial court

when, in announcing its guilty verdict, it referred to the State's alternative theories of defendant's guilt either as a principal or as one accountable for the criminal conduct of others. Because the court did not explicitly state which theory it based its guilty verdict on, we will address defendant's accountability argument.

Defendant contends that the State presented no credible evidence that he shared a common criminal design or intent with Josh before or during the shooting. We disagree.

■ A person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate the offense, he solicits, aids, abets, or agrees or attempts to aid such a person in the planning or commission of the offense. 720 ILCS 5/5—2 (West 1996). To successfully prosecute a defendant on an accountability theory, the State must establish beyond a reasonable doubt that (1) the defendant solicited, aided, abetted, or agreed or attempted to aid another person to plan or commit the offense; (2) such participation took place before or during the commission of the offense; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. *Bailey*, 265 Ill. App. 3d at 274, 638 N.E.2d at 200. A defendant's presence at the scene of a crime plus his knowledge that a crime is being committed, without more, is not sufficient to establish accountability. *People v. Taylor*, 164 Ill. 2d 131, 140, 646 N.E.2d 567, 571 (1995). Nevertheless, active participation is not a requirement for conviction under an accountability theory. *Taylor*, 164 Ill. 2d at 140, 646 N.E.2d at 571.

■ When a defendant challenges his conviction based on the sufficiency of the evidence, the relevant question is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Oaks*, 169 Ill. 2d at 457-58, 662 N.E.2d at 1349-50. To prove that a defendant had the intent to promote or facilitate a crime, the State must establish beyond a reasonable doubt that he showed the criminal intent of the principal or that a common criminal plan or purpose existed. *Taylor*, 164 Ill. 2d at 140-41, 646 N.E.2d at 571. The fact finder may infer a common design from the circumstances surrounding the unlawful conduct. *Taylor*, 164 Ill. 2d at 141, 646 N.E.2d at 571. Proof that the defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companion after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining a defendant's legal accountability. *Taylor*, 164 Ill. 2d at 141, 646 N.E.2d at 571.

■ On the facts of this case, to accept defendant's argument that accountability does not apply here, we would have to conclude that when two people are shooting from the same car at someone on the sidewalk, neither is criminally responsible for the other's conduct. To state that proposition is to demonstrate its absurdity. Defendant's contention that the State presented no credible evidence that defendant shared a common criminal design or intent with Josh before or during the shooting when each of them had a gun and each fired out of the car is equally absurd.

Viewing the evidence in the light most favorable to the prosecution, we conclude that the State presented sufficient evidence to sustain defendant's convictions based upon a theory of accountability.

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, P.J., and COOK, J., concur.