FIRST DIVISION

December 13, 2004

No.1-02-0318

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DUEL THOMAS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 99 CR 10375 

Honorable

John J Moran, Jr.,

Judge Presiding.

OPINION  MODIFIED  ON  DENIAL  OF  REHEARING

JUSTICE CAHILL delivered the modified opinion of the court:

Defendant Duel Thomas was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)) and aggravated kidnaping (720 ILCS 5/10-2(a)(1) (West 2000)) after a jury trial.  He was sentenced to 60 years' imprisonment for murder and 30 years for aggravated kidnaping, to be served concurrently.  Defendant appeals, claiming he is entitled to a new trial because: (1) the State did not prove him guilty beyond a reasonable doubt; (2) the trial court erred in admitting the statement of a witness as a prior inconsistent statement; (3) the trial court erred in admitting evidence linking defendant to a gang; and (4) the State's closing arguments were improper.  We affirm. 

We simultaneously address arguments raised by defendant in his appellate brief and in his petition for rehearing filed after the release on August 31, 2004, of our affirmance of his conviction.  Because the issues raised in his petition overlap with his arguments in his appellate brief and with our conclusions in our affirmance, we issue this modified opinion on denial of the petition for rehearing.     

Quinton Kirkwood's body was found on March 27, 1999, in a rear basement stairwell at 1648 S. Christiana Avenue in Chicago.  He had been shot to death. 

Jeff Henderson was arrested on March 28, 1999, in connection with the murder.  The next day, he gave Assistant State's Attorney Luke Sheridan a statement, implicating defendant in the shooting.  Henderson said he and several other people, including defendant, defendant's brother Antonio Thomas (Antonio) and Linord Thames were in the apartment of Frederick Laws at 
8 p.m. on March 26, 1999.  Thames told defendant and Antonio that Kirkwood was playing dice in another apartment, had won about $9,000 and was a good target for a robbery.  Antonio gave Henderson a set of keys and told him to go get a car that was parked nearby.  Henderson got the car and parked it in front of the building where the dice game was taking place.  About 10 minutes later, Henderson saw Antonio walking Kirkwood at gunpoint from the building.  Antonio pushed Kirkwood into the trunk of the car and closed the lid.  Antonio ordered defendant and Henderson to get inside the car.    

Henderson said Antonio drove to an alley where he stopped and opened the trunk.  Defendant and Antonio grabbed the victim and walked him to a cemented area under a porch behind a building.  When defendant and Antonio demanded money, Kirkwood used a cellular phone to call relatives and ask for money.  Henderson said he heard Kirkwood say he had lost money in a dice game, needed more money and was sending someone to get the money.  Henderson then went to Kirkwood's relatives' house but they refused to give him money.  Henderson returned to the location where defendant and Antonio were holding Kirkwood at gunpoint.  When Henderson told defendant and Antonio that no money was given to him, Kirkwood asked to call his relatives again.  Antonio dialed the number and handed the phone to Kirkwood as defendant shot Kirkwood multiple times with an automatic weapon.  Then Antonio shot Kirkwood multiple times.  Defendant fled on foot.  Henderson and Antonio fled in the car.  The statement said that Henderson was treated well by the police, he had read and signed each page of the statement and he was not threatened or promised anything in exchange for the statement.

Defendant, Antonio, Thames and James Williams were arrested on March 29, 1999.  Defendant was charged by indictment with first degree murder, aggravated kidnaping, kidnaping and attempted armed robbery.  Henderson's trial was held before defendant's trial.  Henderson's  testimony at his own trial was essentially the same as his statement to Sheridan, implicating defendant in the shooting.  Henderson was acquitted.  Defendant, Antonio and Williams then were tried concurrently before separate juries. 

Before opening statements in defendant's trial, the trial judge instructed the jury, giving the following admonition as to closing arguments: 

 "[C]losing arguments [are] not evidence, but it's helpful for you to have the attorneys review the evidence presented in the case and also to discuss inferences to be drawn from the evidence.  It's also your determination as to whether an inference that's argued is in fact a reasonable inference or not because you are the trier of the facts.  You will decide what the facts in the case are."

   The State called Officer Thomas McGreal, who testified that in investigating the crime scene, he found seven cartridge casings and four fired bullets.

The State called Henderson to testify.  Henderson testified that he could not recall seeing defendant on the night of the murder, contrary to his testimony at his own trial, and stated that his entire testimony at his own trial was untrue.  The State then examined Henderson on the basis of the transcript of his trial, impeaching his statements that his trial testimony was untrue.  Defendant did not object.  Henderson said he was not with defendant on the night of the murder and he knew defendant "just from around the neighborhood, that's all."  Henderson admitted to testifying at his own trial that he was with defendant that night, but claimed "the whole transcript you're reading is [a] lie."  

Following a discussion outside the presence of the jury, the trial court determined that Henderson's statement to Sheridan could be admitted under section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (
725 ILCS 5/115-10.1 (West 2002)).  That section allows 
a prior inconsistent statement that would otherwise be excluded as hearsay to be admitted as substantive evidence. 
 
Henderson testified the written statement was "made up" by the assistant State's Attorney.  Henderson said he signed the statement without reading it after being told he could go home if he signed.  

Henderson testified that, contrary to his earlier accounts of the murder, he alone forced Kirkwood at gunpoint into the trunk of a car and tried to rob him.  He said that when he failed to get money from Kirkwood's relatives, he drove to the scene of the murder and shot Kirkwood, firing a .38-caliber weapon with one hand and a .45-caliber weapon with the other hand.

After a discussion with the parties outside the presence of the jury, the trial court decided to allow the introduction of gang evidence despite its earlier refusal to do so.  Over defendant's objection, the trial judge instructed the jury as to gang-related evidence:

"[Y]ou are going to be hearing evidence and testimony that is being admitted for a limited purpose, and the testimony involves the mention of gang membership.  There is no evidence or inference or argument that this homicide in any way was gang related.  So it is being offered for the limited purpose only of evaluation of the credibility of this witness as well as the consideration of any arguments concerning his motivation.

So for that limited purpose only it will be admissible.  It will not be considered by you for any other purposes in deciding the case."

When questioning resumed, Henderson denied ever being a member of the Black Souls street gang, of which defendant was the chief, but Henderson admitted that he so testified at his own trial.  Henderson admitted that he testified that the number one law of the Black Souls was "to never disown one of your brothers" and "to always look up to your older brothers and never disobey the mob, never go against the grain." 

Assistant State's Attorney Virginia Bigane asked Henderson if he had ever told anyone that he committed the crimes, and he replied that he had told her, but he could not recall the exact date.  He claimed to have confessed to Bigane in private while he was waiting for a hearing to begin in the present courtroom on an earlier occasion.  He said that on the day he confessed, he had been transported from the Pinkneyville Correctional Center by correctional officers, and although the officers accompanied him to court, they were not present when he confessed.

The State also examined Henderson as to whether he understood the extent of his immunity from further prosecution following his acquittal:

"Q.  That was [at your own trial] where you told a jury that [defendant] and [Antonio] committed the murder, correct?

A.  Yes, ma'am.

* * *

Q.  You were found not guilty after that testimony, correct?

A.  Yes, ma'am.

Q.  And you now know that the State can never try you again for murder no matter what you say here today, correct?

A.  I don't know.  ***

* * *

Q.  And [your lawyer] informed you that you can say anything you want here today about the murder because you cannot be tried again for the murder, isn't that true?

* * *

MR. WAGNER (Defense Counsel): Objection.

THE COURT: Overruled.

BY THE WITNESS:

A.  He told me something like that, but he said I could still get tried by federal, something about the federal government can try me for murder and stuff like that.

Q.  Well, you are aware that there was an agreement with the State's Attorney that you would not be tried again for murder if you tried to get up and say you did the murder either in this courtroom or any other courtroom –

* * *

A.  No, ma'am.  I wasn't told that.  ***

Q.  Your lawyer didn't tell you that you cannot be tried for this murder either here or anywhere else again?

A.  He didn't say nothing about if I said I committed the murder I couldn't be tried for it.  No, he did not.  ***

Q.  You know, Mr. Henderson, you have gotten up here and have now told us that you committed the murder, correct?

A.  Yes, ma'am.

Q.  But at your own trial [defendant] and [Antonio], according to you, committed the murder, correct?

A.  Yes, ma'am.

Q.  And you were found not guilty after that trial, correct?

A.  Yes, ma'am.

Q.  And you know that the State cannot retry you for murder because you were found not guilty, correct?

* * *

A.  I don't know what you might do.  ***   The State pull[s] all types of stunts."

First Assistant State's Attorney Arthur Hill was called by the State to rebut Henderson's claim he did not know the extent of his immunity from future prosecution after his acquittal.  Hill testified that he was present when Henderson was offered blanket immunity from prosecution for "any real or perceived perjury from any prior testimony as well as any involvement regarding the murder of the victim in this case."  Hill said Henderson answered "yes" when asked if the immunity offered had been explained to him. 

The State called two Pinkneyville correctional officers, Darron Arnett and Craig W. Wilkey, to testify that they transported Henderson from Pinkneyville Correctional Center to the circuit court in August 2, 2001.   Defendant objected on the basis that the Pinkneyville officers were with Henderson only on August 2, 2001, and Henderson did not say that he confessed to Bigane on that date.  In a discussion outside the presence of the jury, defendant argued that the officers' testimony should not be allowed to impeach Henderson's claim he confessed to Bigane because the officers could testify only as to August 2, 2001, and not as to other dates when Henderson was in court, including August 3, 2001, and October 12, 2001.  On those other occasions, Henderson was brought to court by different guards.  The trial court allowed the officers' testimony.  The officers testified Henderson was never outside the presence of at least one of the officers on August 2, 2001; they denied that they heard Henderson confess to Bigane, and they stated they would have reported a confession if it occurred.

Assistant State's Attorney Luke Sheridan testified that Henderson agreed to have his statement memorialized in handwritten form on March 29, 1999.  Henderson told Sheridan he had been well-treated by the police, and he had not been threatened or promised anything in return for the statement.  After Sheridan wrote out the statement, Henderson read the first paragraph aloud and then Sheridan continued to read the full statement aloud with Henderson reading along.  Sheridan said he made corrections requested by Henderson and Henderson then initialed the corrections and signed each page.  The statement was admitted as a prior inconsistent statement, and Sheridan read the entire statement to the jury.  Sheridan said Henderson never admitted committing the crimes.

Kirkwood's aunt, Ernestine Reed, and his cousin, Shakela Kirkwood, testified that Kirkwood called their home at about 9 p.m. on the night of his murder and said he was sending someone to pick up money.  Both witnesses identified Henderson as the man who came to their door.  They testified that they did not give Henderson money.  

Frederick Laws testified that he knew defendant because both of them grew up in the same neighborhood.  Laws said on the day of the murder, he attended a party where he heard Thames, Antonio and defendant discuss robbing Kirkwood of his gambling winnings.  Laws said he heard Antonio say, "let's go," and defendant, Antonio and Thames then left the apartment.  Henderson left about five minutes later.  Laws admitted being convicted of controlled substance violations in 1989 and 1992.

Ronnie Wheatley testified that he was leaving the apartment where the dice game took place on the night of the murder.  Wheatley said Antonio and Kirkwood left the apartment at the same time, and while the men were descending the stairs, Antonio pulled out a silver-colored automatic weapon and pointed it in Wheatley's face.  Wheatley said Antonio then pushed Kirkwood against the wall and put the gun in Kirkwood's face.  Wheatley said he fled and when he exited to the street, he saw some men, including defendant, standing nearby.  Wheatley said Thames told him the next morning that Kirkwood had been killed.  Wheatley said he told Thames, "[t]hey weren't supposed to kill him.  It was only supposed to have been a stick up."

Wheatley admitted he was a heavy user of drugs and alcohol at the time of the murder.  He admitted that while he was in jail for drug offenses in November 1999, he gave an assistant State's Attorney a statement, which was handwritten by the attorney, implicating defendant in Kirkwood's murder.  Wheatley also admitted that he received probation for two drug offenses and was admitted to a rehabilitation program after making the statement.  He admitted that the State's Attorney's office paid for his protection after he was threatened.   

Officer Patrick Foley testified that he found two .45-caliber bullets and one .38-caliber or 9-millimeter bullet under Kirkwood's body.  He said two guns were used.  Foley said he advised defendant of his rights under 
Miranda
 and interviewed defendant at about 9:45 p.m. on March 29, 1999, 
in the presence of another officer.  Foley said defendant admitted to being present when Henderson and Antonio shot Kirkwood, using .45- and .38-caliber automatic pistols.  On cross-examination, Foley admitted that defendant's alleged statement to him was never put in writing.  

Sergeant Dominick Rizzi testified that he investigated the Kirkwood murder and, based on his findings, arrested defendant.  Rizzi said while defendant was in custody, defendant implicated Henderson and Antonio, but over the next several hours, defendant gave differing accounts of the events of that day.  Rizzi, after being examined as to his expertise in firearms, said it would be difficult for someone to fire two weapons—–one with each hand—as Henderson claimed to have done because the guns were not designed for left-hand use and the strong recoil or kickback could cause the shooter to lose control of the guns.   

In closing arguments, the State said because Henderson knew he was immune from further prosecution after his acquittal, he felt free to give a new and false version of the events at this trial by testifying that he alone killed Kirkwood.  The State claimed Henderson falsified his testimony to exonerate defendant because Henderson feared defendant, his gang's chief: 

"This man [defendant] and his brother [Antonio Thomas] were the muscle men behind [Kirkwood's] murder.  And still their muscle power can be felt, his muscle power, not just in how he *** used these powerful guns to plug bullet after bullet after bullet into [Kirkwood's] body; no, the way in which his power is still being felt can be seen by the way you saw 19-year-old Jeff Henderson, substantially younger than him *** come in here and lie on his behalf. 

* * * 

*** [Henderson] can be charged with perjury based on what he said [at defendant's trial] *** when he sat here and admitted that he lied ***.

But which do you think is harder to face?  A few years on a perjury charge or [defendant], his gang chief[?]

MR. WAGNER (Defense Counsel): Objection.  There is no evidence of this.

THE COURT: Overruled.

MR. WAGNER: There is not even a reasonable inference to be drawn.  Objection.

THE COURT: Overruled.

MS. MORASK (Assistant State's Attorney): Last week was pay back time.  After [Henderson's] trial he had to pay [defendant] back.  Who was watching [Henderson's] trial?  [Defendant], according to them.  If [defendant] is watching [Henderson's] trial, [Henderson] knows he has to pay [defendant] back. ***

MR. WAGNER: Objection.  There is no evidence of that.

THE COURT: Overruled.  The jury can determine if there is a reasonable inference or not.

MS. MORASK: [A]t [Henderson's] trial he has [dual] motives. (a), he wants to get acquitted; and (b), he doesn't want to get killed.

MR. WAGNER: Objection.  I ask that be stricken.

THE COURT: Overruled."

The State repeated this theme in its closing argument and defendant's objections were overruled.  The State argued there was no evidence that Henderson committed perjury at his own trial when he inculpated defendant.  The State characterized Laws as defendant's "friend," arguing that, as such, Laws had no motive to give testimony in the State's favor, but did so.  Defendant's objection was overruled.  

After defendant was convicted and sentenced, he filed motions for a new trial and to reconsider sentencing, which were denied.  Defendant appeals. 

 Defendant's main arguments for reversal are: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in admitting Henderson's earlier statements as prior inconsistent statements; (3) the trial court erred in admitting evidence linking defendant to a gang; and (4) the State's closing arguments were improper.  We review these in turn.

Defendant first argues that the State failed to establish proof of his guilt beyond a reasonable doubt because its case depended entirely on the "incredible" testimony of Henderson.   Defendant claims Henderson's testimony was fatally discredited because he was an accomplice, he had been immunized from prosecution, he had recanted his earlier statement and he appeared to be a habitual perjurer.

"When a defendant challenges the sufficiency of the evidence, it is not the function of [the] court to retry the defendant."  
People v. Evans
, 209 Ill. 2d 194, 209, 808 N.E.2d 939 (2004)
.  A reviewing court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  
Evans
, 209 Ill. 2d at 209
.  The court "will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt."  
Evans
, 209 Ill. 2d at 209.

 A person commits first degree murder when he kills a person without lawful justification and, in performing the acts which cause the death, he "either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another."  720 ILCS 5/9-1(a)(1) (West 2000).  A person commits aggravated kidnaping when he kidnaps for the purpose of obtaining ransom.  720 ILCS 5/10-2(a)(1) (West 2000).

Where, as here, the evidence includes testimony that normally would be barred as hearsay, the evidence is properly admitted if it meets the criteria in section 115-10.1 of the Code:

"(a) the statement is inconsistent with [the witness'] testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement--

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding[.]"  725 ILCS 5/115-10.1 (West 2002).

An earlier statement that is inconsistent with a witness' testimony also may be admissible as impeachment, as long as it is truly inconsistent with the trial testimony and deals with a matter that is more than collateral.  
People v. Crowe
, 327 Ill. App. 3d  930, 938, 764 N.E.2d 1174 (2002).
 We first address defendant's claim that we must reverse his conviction because Henderson's uncorroborated earlier statement was the sole evidence against defendant and  insufficient to support the jury's finding of defendant's guilt beyond a reasonable doubt.  Defendant relies on three cases to support his argument:  
People v. Parker
, 234 Ill. App. 3d 273, 280, 600 N.E.2d 529 (1992);  
People v. Arcos
, 282 Ill. App. 3d 870, 875-76, 668 N.E.2d 1177 (1996); 
People v. Brown
, 303 Ill. App. 3d 949, 965, 709 N.E.2d 609 (1999).  

In 
Parker
, the defendant's conviction was reversed because the prior inconsistent statements of three recanting witnesses were the only evidence against the defendant and the statements were so seriously impeached at his trial as to cast doubt on their authenticity.  
Parker
, 234 Ill. App. 3d at 280.  In 
Arcos
, the trial judge erred in a bench trial when he convicted the defendant despite finding that the sole witness, who recanted his earlier statements, was a

 " 'thoroughly disreputable person who cannot be believed.' "  
Arcos
, 282 Ill. App. 3d at 871.  This court concluded that in light of the trial judge's assessment of the witness, corroborating evidence would have been required to remove all reasonable doubt of the defendant's guilt.  
Arcos
, 282 Ill. App. 3d  at 876.   In 
Brown
, reversal was warranted because the only evidence linking the defendant to the crime was a statement made by a witness two years after the crime, and that statement was disavowed by the witness at the defendant's trial.  
Brown
, 303 Ill. App. 3d at 965.  There, we determined that because the witness' prior statement implicating the defendant was uncorroborated and was not made contemporaneously with the crime, it was insufficient as proof beyond a reasonable doubt.  
Brown
, 303 Ill. App. 3d at 965. 

We find the cases relied on by defendant—
Parker
, 
Arcos
 and 
Brown
—are distinguishable.  In each case, the witnesses' prior statements suffered from serious weaknesses.  In 
Parker
, the prior statements were severely impeached.  
Parker
, 234 Ill. App. 3d at 280.
  In 
Arcos
, the trier of fact reached two logically incompatible conclusions: first, that the witness was thoroughly disreputable; 
and
, second, that his prior statement was adequate proof of guilt beyond a reasonable doubt.  
Arcos
, 282 Ill. App. 3d at 871
.  In 
Brown
, the statement implicating the defendant was made two years after the crime.  
Brown
, 303 Ill. App. 3d at 965. 
 

There were no such weaknesses here.  Henderson's statement to Sheridan was made two days after the murder.  Henderson's own trial testimony, used as impeachment, was credible as shown by the fact that it won his acquittal.  The State did not advance the theory that Henderson was an inveterate liar but, rather, painted him as a strategic liar whose immunity and fear of defendant prompted him to implicate himself falsely when defendant was on trial.

The cases relied on by defendant have been distinguished by other holdings that recanted prior inconsistent statements can be sufficient to support a conviction, even without corroborating evidence.  See 
People v. Craig
, 334 Ill. App. 3d 426, 440, 778 N.E.2d 192 (2002), 
appeal denied
, 
202 Ill. 2d 679, 787 N.E.2d 175 (2003), and its antecedents,  
People v. Curtis
, 296 Ill. App. 3d 991, 996-97, 696 N.E.2d 372 (1998), 
appeal denied
, 
184 Ill. 2d 562, 714 N.E.2d 529 (1999); 
People v. Morrow
, 303 Ill. App. 3d 671, 677, 708 N.E.2d 430 (1999), 
appeal denied
, 
184 Ill. 2d 567, 714 N.E.2d 531 (1999); 
 People v. Zizzo
, 301 Ill. App. 3d 481, 489, 703 N.E.2d 546 (1998); and 
People v. Wilson
, 66 Ill. 2d 346, 349,  362 N.E.2d 291 (1977).  
See
 also 
People v. Logan
, 352 Ill. App. 3d 73, 79-80, 815 N.E.2d 830 (2004).  

This court in 
Craig
 distinguished 
Parker
, 
Arcos
 and 
Brown
: 

"Ultimately, in deciding whether there was sufficient evidence to prove defendant guilty beyond a reasonable doubt, we must decide whether cases such as 
Arcos
 and 
Parker
 require that convictions based solely upon prior inconsistent statements must also have corroborating evidence to support the conviction.  *** [U]nder 
Morrow
 and 
Curtis
, additional corroboration is not required and we are not to engage in looking for corroboration.  In light of the fact that 
Morrow
 follows the guidance from the supreme court in [
Wilson
, 66 Ill. 2d at 349] ('whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for conviction goes to the weight of the evidence and is, therefore, in the province of the jury or the court'), and that the supreme court denied the appeals in [
Curtis
 and 
Morrow
,] [citations] we follow that analysis."  
Craig
, 334 Ill. App. 3d at 440.

In 
Craig
, this court affirmed the defendant's conviction, rejecting his claim that the evidence was insufficient because the primary evidence against him consisted of statements and grand jury testimony by two witnesses, both of whom recanted on the stand.  
Craig
, 334 Ill. App. 3d at 435.  The court in 
Craig
 relied on 
Curtis
, 
Morrow
 and 
Zizzo
 to conclude that " 'previous inconsistent statements alone were sufficient to prove defendant's guilt beyond a reasonable

doubt' " and if earlier statements meet the criteria in section 115-10.1, they are accepted as reliable and voluntary and no further analysis is needed. 
 
Craig
, 334 Ill. App. 3d at 438, quoting 
Morrow
, 303 Ill. App. 3d at 677.  The court further concluded that where a guilty verdict is based on a prior inconsistent statement, a 
reviewing court need not, and in fact may not, determine whether the witness testimony was "substantially corroborated" or "clear and convincing."  
Craig
, 334 Ill. App. 3d at 438.  

The court in
 Craig
 went on to define the role of the appellate court in reviewing verdicts founded on prior inconsistent statements:

"[I]n determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this court has held that there are no 'suspect categories' of properly admitted evidence that require a different standard of appellate review.  
Curtis
,
 296 Ill. App. 3d at 999.  Therefore, courts of review are not allowed to differentiate between types of evidence properly admitted before the trier of fact.  
Curtis
,
 296 Ill. App. 3d at 999.
  In other words, when a defendant is convicted and then appeals, one standard of review applies to all evidence.  
Curtis
,
 296 Ill. App. 3d at 999.
  As such, evidence of prior inconsistent statements properly admitted, even if later recanted, should be treated no differently.  
Curtis
,
 296 Ill. App. 3d at 999."
  
Craig
, 334 Ill. App. 3d at 439.
 

We adopt the reasoning in 
Curtis
 and decline to subject the jury's verdict to greater scrutiny by requiring "substantially corroborated" or "clear and convincing" evidence merely because the jury convicted defendant after hearing the prior inconsistent statements of Henderson.  Here, not only was Henderson impeached with testimony from his own trial where he was acquitted, but his statement to Sheridan was deemed reliable and admissible under section 115-10.1 (725 ILCS 5/115-10.1 (West 2002)).  Whether Henderson's testimony formed a satisfactory basis for conviction was a question for the jury.  
Wilson
, 66 Ill. 2d at 349.

While Henderson's statements were the State's strongest evidence, there was other evidence before the jury to support conviction.  Henderson's trial testimony and statement to Sheridan were consistent with the testimony of Shakela Kirkwood, Reed, Laws and Wheatley.  Rizzi's testimony showed that defendant gave inconsistent accounts of his involvement and refuted Henderson's claim in his recanted testimony that he alone fired two weapons.

     But even without this corroborative evidence:

"[I]t
 does not necessarily portend that, as a matter of law, a recanted prior inconsistent statement admitted under section 115-10.1 cannot support a conviction.  [
Curtis
,  296 Ill.  App. 3d at 996-97]; accord [
Zizzo
, 301 Ill. App. 3d 481, 703 N.E.2d 546].  In the present case, the previous inconsistent statements alone were sufficient to prove defendant's guilt beyond a reasonable doubt.  If a prior statement meets section 115-10.1's test, 'a finding of reliability and voluntariness is automatically made. ***  Accordingly, no additional analysis is needed.  *** [I]t is the jury's decision to assign weight to the statement and to decide if the statement was indeed voluntary, after hearing the declarant's inconsistent testimony.'  [Citations.]
"  
Morrow
, 303 Ill. App. 3d at 677. 
 

Here, Henderson's statement to Sheridan met the requirements of section 115-10.1.  The statement was inconsistent with his testimony at defendant's trial where Henderson said he killed Kirkwood.  Henderson was subject to cross-examination about the statement by defense counsel.  The statement described events of which Henderson had personal knowledge—he rode in the car with defendant while Kirkwood was locked in the trunk, he attempted to obtain money from Kirkwood's relatives and he was present when defendant and Antonio shot Kirkwood.  

Henderson's other inconsistent statements, recorded at his own trial, were properly admitted as impeachment when he said he could not recall the events of that night and his own trial testimony was false.  His earlier statements were truly inconsistent with his trial testimony here and dealt with the most substantive matter: Who killed Kirkwood?  See 
Crowe
, 327 Ill. App. 3d at 938 (an earlier inconsistent statement may be admissible as impeachment if it is truly inconsistent and deals with a matter that is more than collateral). 

We conclude that Henderson's statement to Sheridan and his testimony from his own trial, as well as his recantation, all were properly before the jury.  We believe that, taken together
 and in the light most favorable to the State, these statements could lead a rational jury to conclude that Henderson told the truth when he implicated defendant, but he lied when he implicated himself. 
 We find 
nothing here to justify the substitution of this court's judgment for that of the jury in weighing Henderson's statements.  See
 
Logan
, 352 Ill. App. 3d at 79-80
.

Defendant takes issue with our reliance on 
Curtis
, claiming that case was wrong and "utterly antithetical to the concept of appellate review."  He contends that by following 
Curtis
, and not requiring the evidence against defendant to be 
"substantially corroborated" or "clear and convincing," we
 fail to discern that the State's proof was weak and the evidence was inadequate. 

Defendant argues that the threshold test of reliability and voluntariness prescribed in section 115-10.1 (
725 ILCS 5/115-10.1 (West 2002)) 
does not contravene this court's obligation to ensure that only evidence which removes all reasonable doubt will sustain a conviction.   
Defendant argues that supreme court precedent mandates a "factual review of the evidence," under 
People v. Ash
, 102 Ill. 2d 485, 492-93, 468 N.E.2d 1153 (1984), and 
People v. Smith
, 185 Ill. 2d 532, 541-42, 708 N.E.2d 365 (1999).  

In 
Ash
, the supreme court concluded that an appellate court must reverse a conviction where the State failed to sustain its burden of proof, and in 
Smith
, it held that a jury's determination is not conclusive where the evidence is unreasonable, improbable or unsatisfactory.  In 
Ash
, an accomplice gave uncorroborated testimony, but the court determined that other weaknesses, including the fact that the testimony of the two victims was "vague and doubtful," invalidated the jury's verdict of guilty beyond a reasonable doubt.  
Ash
, 102 Ill. 2d at 494-95.  We do not believe that 
Ash
 supports defendant's assertion that Henderson's statements before his recantation cannot stand as proof beyond reasonable doubt.  Here, there was evidence from other witnesses—Shakela Kirkwood, Reed, Laws, Wheatley and Rizzi—supporting Henderson's original versions of the events.  While the credibility of Laws and Wheatley could be questioned and the opinion of Rizzi discounted, Shaleka and her mother, Reed, testified to events that matched Henderson's original accounts.  This differs from 
Ash
 where other evidence diminished, rather than supported, the credibility of an accomplice. 
      

In 
Smith
, where the State's case hinged on the testimony of a single witness, the supreme court determined that the defendant was not proved guilty beyond a reasonable doubt because serious inconsistencies in and repeated impeachment of the details of the witness' testimony prevented the State from meeting its burden of proof beyond a reasonable doubt.  
Smith
, 185 Ill. 2d at 545.  The facts here are unlike those in 
Smith
.  No witnesses here gave testimony that supported Henderson's claim that he alone killed Kirkwood.  His statement to Sheridan and testimony at his own trial were not discredited by pervasive inconsistencies or impeachment.  Henderson alone recanted his earlier statements, claiming that he, not defendant, killed Kirkwood.   Here, the trial court tested Henderson's statement against the safeguards of reliability mandated in section 115-10.1 and deemed it admissible.  The tests imposed by section 115-10.1 are sufficiently rigorous that if a statement is properly admitted under this section, its reliability can be trusted.  
Morrow
, 303 Ill. App. 3d at 677.  We believe that the trial court's analysis of Henderson's statement under section 115-10.1 was sound and Henderson's earlier statements, as admitted, were sufficient to sustain the conviction.  We believe the legislature's purpose in enacting section 115-10.1 was fulfilled here.  The statute was enacted to prevent "a turncoat witness" from merely denying an earlier 
statement when that statement was made under circumstances indicating it was likely to be true.  
People v. Fauber
, 266 Ill. App. 3d 381, 390-91, 640 N.E.2d 689 (1994);
 accord 
Craig
, 334 Ill. App. 3d at 442.

This conclusion does not, as defendant argues, render all guilty verdicts based on recanted testimony immune from reversal.  See, for example, 
People v. Redd
, 135 Ill. 2d 252, 313-14, 553 N.E.2d 316 (1990) (reversal is proper where prior inconsistent statements are admitted but the requirements of section 115-10.1 are not met).   

Nonpublishable material under Supreme Court Rule 23 (166 Ill. 2d R. 23) removed here.

Defendant next argues he is entitled to a new trial because the trial court erred in admitting Henderson's statement to Sheridan under section 115-10.1.  The State contends and the record supports the conclusion that defendant waived this argument by not properly preserving it for review.  See 
People v. Enoch
, 122 Ill. 2d 176, 186,  522 N.E.2d 1124 (1988).  But because waiver limits the parties' ability to raise an argument, not this court's right to entertain it (
People v. Colin
, 344 Ill. App. 3d 119, 129 n.4, 799 N.E.2d 451 (2003)), we will address this issue.

Defendant asks us to review this matter 
de novo
 as a question of statutory construction: "[D]id the enactment of section 115-10.1 repeal or [affect] the previously settled rule that it is error to adduce multiple consistent statements to a jury in an effort to bolster the credibility of each?"  Matters of statutory construction are purely issues of law subject to 
de novo 
review.   
In re Justin M.B.
, 204 Ill. 2d 120, 787 N.E.2d 823 (2003). 

We disagree with defendant's contention that this presents a question of statutory construction.  We do not accept the proposition that section 115-10.1, the statute governing prior inconsistent statements, was extended to prior consistent statements here.  An i
nadmissible consistent statement generally is one 
made before a trial and then introduced to 
corroborate trial testimony. 
 
People v. Heard
, 187 Ill. 2d 36, 70, 718 N.E.2d 58 (1999).  Defendant's statement to Sheridan, while made before trial, was not introduced to corroborate, but rather to contradict, Henderson's trial testimony.  It was not a prior 
consistent 
statement.  
Section 115-10.1 was applied properly to a prior inconsistent statement–Henderson's statement to Sheridan.  The statute was not extended to include prior consistent statements and 
de novo
 review is not warranted.  

The proper standard of review where, as here, an issue concerns the 
admissibility of 
evidence
 is whether the trial court abused its discretion.  
People v. Hawkins
, 326 Ill. App. 3d 992, 995, 762 N.E.2d 46 (2001).

 Defendant asserts that Henderson's statement to Sheridan and his own trial testimony should not have been admitted because they were consistent with each other and had an improper bolstering effect—plain error under 
People v. Gray
, 209 Ill. App. 3d 407, 418, 568 N.E.2d 219 (1991).  See  
People v. Kasp
, 352 Ill. App. 3d 180, 192, 815 N.E.2d 809, 821 (2004) (plain error may warrant review where the evidence was closely balanced or a substantial right was affected
).  In 
Gray
, the defendant's conviction of aggravated criminal sexual assault was reversed because the trial court improperly admitted the prior consistent statements of three witnesses, all of whom were told by the victim that she was "raped."  
Gray
, 209 Ill. App. 3d at 417-18.  The trial court also refused to allow the victim to be cross-examined.  This case differs because Henderson's two earlier accounts of events were 
not
 consistent with his testimony at defendant's trial.  Had Henderson told other witnesses that defendant killed Kirkwood, and those witnesses testified at trial that defendant killed Kirkwood, then the facts would parallel those in 
Gray
.  Those are not the facts here.  Henderson was the only witness.  His own trial testimony was used for impeachment.  Only his statement to Sheridan was admitted as substantive evidence.  No other consistent statements were admitted substantively.  Finally, Henderson, unlike the victim in 
Gray
, was subject to cross-examination.  
Gray
 does not require us to find that Henderson's two earlier statements, admitted for different purposes, should have been excluded as prior consistent statements.

Defendant alternatively argues that Henderson's written statement to Sheridan was inadmissible because, under "common law," prior 
consistent
 statements are inadmissible, citing 
People v. Powell
, 53 Ill. 2d 465, 474, 292 N.E.2d 409 (1973) (a witness' out-of-court statement that harmonizes with his in-court testimony generally is inadmissible).  The State responds that defendant's "entire argument is based on a misrepresentation as to how inconsistency is determined," under 
People v. Modrowski
, 296 Ill. App. 3d 735, 750, 696 N.E.2d 28 (1998).  An inconsistency for the purposes of section 115-10.1 refers to a contradiction between a witness' earlier statements and that witness' in-court testimony.  
Modrowski
, 296 Ill. App. 3d at 743.  In 
Modrowski
, a witness' grand jury testimony was admitted as substantive evidence under section 115-10.1 and similar oral statements to police were admitted as impeachment.  
Modrowski
,  296 Ill. App. 3d at 743.  The court affirmed the conviction, finding that the witness' grand jury testimony was admissible as substantive evidence under section 115-10.1 because it contradicted his trial testimony: "[s]ince the complained-of statements used by the State satisfied all of the requirements of section 115-10.1, we conclude that their use as substantive evidence was proper."   
Modrowski
, 296 Ill. App. 3d at 746.  We reach the same conclusion here.  

Defendant argues 
Modrowski
 in fact contradicts the conclusion that Henderson's prior inconsistent statement was properly admitted.  He points to the fact that in 
Modrowski
, one statement was admitted substantively as a prior inconsistent statement under 115-10.1 while the other statement was not admitted substantively, but as impeachment.  He avers that both statements here were admitted substantively.  We disagree.  The facts here parallel those in 
Modrowski
.  Henderson's own trial testimony was admitted as impeachment, not as substantive evidence.  This comports with the rule that, in general, a prior inconsistent statement is admissible solely for impeachment purposes, not as substantive evidence of the truth of the matter asserted.  
People v. Olinger
, 176 Ill. 2d 326, 360, 680 N.E.2d 321 (1997).
  By meeting the criteria of section 115-10.1, Henderson's statement to Sheridan was admitted properly as substantive evidence. We 
conclude that both Henderson's trial testimony and his statement to Sheridan were properly before the jury.  

Defendant cites 
People v. Mitchell
, 225 Ill. App. 3d 708, 588 N.E.2d 1247 (1992), 
overruled on other grounds
 
in
 
People v. Bowen
, 183 Ill. 2d 103, 112, 699 N.E.2d 577 (1998), to argue that "section 115-10.1 is not a vehicle designed or intended to allow the introduction of what are corroborative statements."  In 
Mitchell
, the court rejected the State's attempt to introduce a witness' videotaped statement under section 115-10.1 because the taped statements were generally consistent with the witness' in-court testimony.  
Mitchell
, 225 Ill. App. 3d at 716.  Here, Henderson's statement to Sheridan was not consistent with his in-court testimony at defendant's trial.  The statement did not bolster, but contradicted, his trial testimony.  We conclude that the purpose of section 115-10.1 was served: a turncoat witness was foiled in his attempt to back away from an earlier 
statement made under circumstances indicating it was likely to be true.  See 
Fauber
, 266 Ill. App. 3d at 390.

Nonpublishable material under Supreme Court Rule 23 (166 Ill. 2d R. 23) removed here.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.